UNITED STATES v. ALBERT LORSCH & CO.

(Circuit Court of Appeals, Second Circuit. November 8, 1907.)

No. 59 (3,774).

1. CUSTOMS DUTIES—CLASSIFICATION—AGATE BEARINGS—"MANUFACTURES OF AGATE"—"PRECIOUS STONES."

Pieces of agate, which have been cut, polished, and grooved to fit them for specific use as scale bearings, are more specifically enumerated under Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 115, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636], as "manufactures of agate * * * not specially provided for," than under Schedule N, par. 435, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676], as "precious stones advanced in condition or value * * * and not set."

2. SAME—SPECIFIC EXCEPTION FROM GENERAL PROVISION—"NOT SPECIALLY PROVIDED FOR."

Where Congress, having provided in general terms for a group of articles, which includes many different species, as "precious stones," selects by name one of those species and prescribes that manufacturers of that particular species shall be dutiable at a different rate, as "manufacturers of agate, not specially provided for," it has so clearly indicated its intention to withdraw the article from the general group as soon as it becomes a completed manufacture that the absence of the limiting clause, "not specially provided for," from the group provision, is not particularly significant.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decision below, see 152 Fed. 591, affirming a decision of the Board of United States General Appraisers (G. A. 5,875; T. D. 25,-965), which had followed the decision by the Circuit Court for the Southern District of New York in U. S. v. American Express Co., 147 Fed. 894, and was rendered before the contrary decision by the

Circuit Court for the Southern District of Ohio in Smith v. Computing Scale Company, 147 Fed. 890.

J. Osgood Nichols, Asst. U. S. Atty. (Henry L. Stomson, U. S. Atty., on the brief), for the United States.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The collector classified the articles under Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 115, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636], which reads:

"115. Manufacturers of agate, alabaster, chalcedony, chrysolite, coral, cornelion, garnet, jasper, jet, malachite, marble, onyx, rock crystal, or spar, including clock cases with or without movements, not specially provided for in this act, fifty per centum ad valorem."

The importers contend that they should have been classified under paragraph 435 of the jewelry schedule (Schedule N, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676]), which reads:

"435. Diamonds and other precious stones advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, and not set, ten per centum ad valorem; imitations of diamonds or other precious stones, composed of glass or paste, not exceeding an inch in dimensions, not engraved, painted, or otherwise ornamented or decorated, and not mounted or set, twenty per centum ad valorem."

The Board of General Appraisers found that the articles are:

"Pieces of agate, all similar in form but differing slightly in dimensions, the largest not exceeding one inch in length, one-half inch in depth and one-fourth of one inch in width which have been cut, polished and grooved, thus fitting them for specific use as bearings for scales of superior quality."

No one disputes the accuracy of this finding. The evidence shows that nothing further is required to fit them for that specific use. They are ready to be fitted into the grooves prepared for their reception in the completed scales. As one of the witnesses expresses it:

"Nothing [has to be done to it] except to place it right in a notch in the beam ends of the scale and then rest the levers right on it. * * * In the scale in which this bearing is set, the opening is left there and it is pushed in; the receptacle in which they are put being made so carefully that there is no trouble whatever in placing the article inside."

They are known in the trade as "agate bearings," and are manifestly manufactures of agate. It is conceded that agate is a precious stone. The Board held that:

"The provision of paragraph 435 for precious stones cut but not set (but susceptible of being set) is without terms of limitation, and would seem to be more specific than the provision of paragraph 115 for manufactures of agate not specially provided for."

We do not concur in this conclusion. The group of articles known as "diamonds and other precious stones" includes many different species. When Congress selects by name one of those species, and provides that manufactures of that particular stone shall be dutiable at a different rate, it so clearly indicates its intention to withdraw

the article from the general group, as soon as it has become a completed manufacture, that the absence of the words "not specially provided for" in the paragraph covering the group is not particularly significant. Indeed, importers' counsel concedes that agate paper weights, blotters, paper cutters, seals, and the like would be properly classified under paragraph 115. These agate bearings, which have become completed manufactures, salable as such in trade, are plainly susceptible of a similar classification. A former decision of this court, however (U. S. v. Benedict & Warner, 145 Fed. 914, 76 C. C. A. 446), induced the judge who heard the cause below to reach a different conclusion. In that case the merchandise consisted of—

"semispherical rock crystal polished, the flat surfaces of which have been engraved intaglio in designs of animal heads. The intaglio cuttings are painted in living colors. After being mounted they are used in the nature of ornaments, such as scarf pins, brooches, etc."

It was held that they were within paragraph 435, and not covered by paragraph 115. A brief memorandum of opinion was filed, stating that the evidence showed:

"That, while the natural rock crystal itself is not particularly expensive, these completed intaglios unset cost as high as $13 to $15 each, and that this cost is due to the fact that the ornamentation is done with an engraving tool in an expensive manner. They are used for jewelry purposes only."

Diamonds and other precious stones are mainly used for jewelry or ornamental purposes, being advanced in condition from their natural state by cleaving, splitting, cutting, or other process. It is shown that there are various well-recognized "cuts" or shapes, such as rose cut, diamond cut, cabochon, intaglio, cameo, and others, all adapted to advance the stone in condition and value. In the Benedict & Warner Case it appeared that the rock crystal had been cut intaglio, and could be mounted as such in scarf pin or brooch; and the question to which the attention of the court was directed was whether the addition of painting in the grooves thus cut, which added to the beauty of the design, but did not change its adaptability to use, made it a "manufacture of rock crystal," rather than "rock crystal advanced by cleaving, splitting, or cutting." In other words, the question presented in that case was whether the "other process" referred to in paragraph 435 must, on the principle of "noscitur a sociis," be confined to processes similar to "cleaving, splitting, or cutting," and therefore not inclusive of painting.

Whatever be the language used in the Benedict Case, and the court as then constituted erred at least in filing a memorandum so brief as not to set forth fully the point decided, we are clearly of the opinion that these agate bearings have become a manufacture separate and distinct from the "precious stones advanced" of paragraph 435. The decision of the Circuit Court is reversed.