UNITED STATES *v.* ALTMAN & Co. *et al.* (No. 1479).[1]

SHOE BUCKLES OR SLIDES—GALLILITH BELTS—COMBS.

> The evidence of record and the sample sustains the decision of the board as to the imitation jewelry here. As to the gallatin belts there is not sufficient testimony to overcome the presumption of correctness in the return of the collector.— United States *v.* International Forwarding Co. (6 Ct. Cust. Appls., 25; T. D. 35272).

United States Court of Customs Appeals, May 3, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36687 (T. D. 34824). [Modified.]

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Leland N. Wood,* special attorney, on the brief), for the United States. *Allan R. Brown* for appellee.

---

[1] Reported in T. D. 35390 (28 Treas. Dec., 761).

Before MONTGOMERY, SMITH, BARBER, DE VRIES and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The Board of General Appraisers in the decision which this appeal brings here for review segregated and classified the imported merchandise the subject thereof as follows:

(1) Necklets, diadems, brooches, hatpins, necklaces, clasps, bracelets, crosses, lavalieres, bar pins, pendants, earrings, charms, dog collars to be worn around a woman's neck, sautoirs, and cuff links or buttons, composed of base metal or silver, some set with imitation precious stones or pearls, some plain, and others enameled.

(2) Shoe buckles, slides, belt buckles, dress ornaments, motifs, and garter clasps, made of silver or base metal, some set with imitation precious stones, and others plain or enameled.

(3) Belts made of gallilith and nickeled copper or silver and collars of velvet with sterling silver ornaments set with rhinestones.

(4) Copper slides gilded and enameled, represented by Exhibit 1, protest 704986.

(5) Perfume balls, consisting of a small, round ball, enameled, having a perforated piece of metal on the inside, made to open, composed of sterling silver and enamel, carried on a chain as an ornament.

(6) Chains of gun metal, some set with rhinestones and pearls, others plain, about 60 inches long, intended to be worn around the neck either with or without small articles attached thereto; also chatelaines composed of a chain with three smaller chains pendant from it, used to suspend small articles from the waist, composed of base metal set with imitation precious stones.

(7) Hair ornaments, such as barrettes, slides, buckles, bandeaux (made of sterling silver or base metal, plain, enameled, or set with imitation precious stones), combs and hairpins of real and imitation tortoise shell with or without silver or base metal, some plain and others set with imitation precious stones, used to confine the hair and also to ornament it.

The merchandise was assessed by the collector under the first provision of paragraph 448 of the tariff act of 1909, reading:

448. Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished, if set with imitation precious stones composed of glass or paste (except imitation jet), or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal, whether or not enameled, washed, covered, plated, or alloyed with gold, silver, or nickel, and designed to be worn on apparel or carried on or about or attached to the person, valued at twenty cents per dozen pieces, one cent each, and in addition thereto three-fifths of one cent per dozen for each one cent the value exceeds twenty cents per dozen; * * * all of the foregoing, whether known as jewelry or otherwise and whether or not denominatively or otherwise provided for in any other paragraph of this act, twenty-five per centum ad valorem in addition to the specific rate or rates of duty herein provided; * * *.

It is claimed to be dutiable by the importers, among other rates, at 45 per cent ad valorem under paragraph 199, reading:

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

Or at 60 per cent ad valorem as articles commonly or commercially known as jewelry under the last provision of paragraph 448, which reads:

448. \* \* \* All articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem.

The board reversed. the collector and found the merchandise enumerated in 1, 2, 3, 5, 6, and 7 to be articles commonly or commercially known as jewelry; that the articles designated in 4 were not commonly or commercially known as jewelry, but that by reason of being valued at less than 20 cents per dozen pieces took them out of paragraph 448 and that they were properly dutiable under the provisions of paragraph 199, *supra*. The Government appeals, and while its specifications of error cover all the enumerated classes of merchandise, in the briefs and at the oral argument in this court the appeal was expressly limited to the merchandise grouped under classes 2, 3, 5, 6, and 7. The importers likewise conceded and consented to a reversal of the decision of the Board of General Appraisers so far as it related to plain real and imitation tortoise-shell combs and hairpins without metal or jeweled settings. These articles were not represented in this court by samples and are conceded by counsel for the appellees not to be jewelry. It was stated that the items can readily be distinguished upon the invoices and for that reason no further reference need be made thereto in the opinion of the court for the purposes of reliquidation.

While the Government appeal is related as stated, the testimony before the Board of General Appraisers was almost entirely confined to certain so-called "shoe buckles" of base metal in imitation of silver set with rhinestones and a belt buckle of imitation bronze metal set with various imitation precious stones. There was no testimony as to the gallilith belt and the sample exhibits the only direct evidence relevant thereto in the case. There are before the court, as there were before the board, samples of these so-called shoe buckles, of the gallilith belt, and of the combs, all of which are set with imitation precious stones in a metallic setting. The Board of General Appraisers upon the evidence before them sustained the protest and made a finding of fact that the articles in question were as to the facts as above stated. No question of law is made in the case, and the appeal presents essentially the question of whether or not the evidence in the record is sufficient to sustain the decision of the Board of General Appraisers. We think that in the main it is. Whether or not an incidental purpose of utility deprives an article of its character as jewelry or imitation jewelry was considered in this court in

United States *v.* International Forwarding Co. (6 Ct. Cust. Appls., 25; T. D. 35272) and decided in the negative. The articles mainly here in controversy, the so-called shoe buckles, are shown by the testimony not to possess any purpose of utility. Indeed, it would seem a misnomer to characterize them buckles, for as a matter of fact they are merely slides intended to be slipped over a strip of leather, or a ribbon, or a belt, or other retaining article, or to be sewn upon a shoe, article of wearing apparel, or millinery. They are in fact slides and not buckles. And, while they are characterized as "shoe buckles," the testimony uniformly establishes that that is only their immediate employment; that according to the caprice of fashion they have at other times been used more extensively upon wearing apparel, on millinery, or upon ribbons as a band or dog collar around the neck.

The testimony is equally uniform that they are worn and used for ornamentation and that exclusively. A review of the testimony in this case discloses that with singular uniformity the witnesses for the Government declared that these articles if made of the precious metals and stones would unquestionably be jewelry, and with like singular uniformity equally declared that the metals and stones of which they are made were in imitation of precious metals and stones. The record contains not one syllable of testimony controverting that fact, but every witness in the case, whether called by the Government or importers, to whom these questions were put, declared the affirmative. In the International Forwarding case, *supra*, this court reviewed and quoted with approval former decisions of other courts pointing out that inasmuch as the last provision of paragraph 448 was extended to "*all* articles commonly or commercially known as jewelry" that provision included imitation jewelry as well as genuine jewelry made of the precious metals and stones. Accordingly we find nothing in this record which would warrant the court in disturbing the findings of the Board of General Appraisers. On the contrary those findings seem to be amply supported by the testimony in the record and the samples of the imported articles. In the absence of any direct evidence other than the sample we are not satisfied, however, that the gallilith belt is commonly or commercially known as jewelry or imitation jewelry. As to that item we do not find sufficient evidence in the record to overcome the presumption of correctness attending the return of the collector. It seems an ornament pure and simple, without any of the characteristics of jewelry, genuine or imitation, and we so hold.

With the limitations stated the decision of the Board of General Appraisers is *modified,* and as thus modified *affirmed.*