LOEWENTHAL & Co. *v.* UNITED STATES (No. 1529).[1] WILLENBORG & Co. *v.* UNITED STATES (No. 1531).[2]

1. APPLIQUÉD.

An article is appliquéd within the tariff sense when it is ornamented with a pattern or design independently fabricated. These goods are not appliquéd.— United States *v.* Hamburger Levine Co. (5 Ct. Cust. Appls., 217; T. D. 34382).

2. ARTICLES IN CHIEF VALUE OF BEADS, PARAGRAPH 333, TARIFF ACT OF 1913.

These articles are in chief value of beads and paragraph 333, tariff act of 1913, relative to "beads and spangles and other articles not appliquéd but composed in chief value of beads" applies more specifically to the goods here than paragraph 358 of that act providing for, amongst other articles, "ornaments" and "trimmings."

## United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, Abstract 37284, and G. A. 7661 (T. D. 35048).

[Reversed.]

*Comstock & Washburn* for Loewenthal & Co.; *McLaughlin, Russell, Coe & Sprague* (*Edward P. Sharretts* of counsel) for Willenborg & Co.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

---

[1] Reported in T. D. 35464 (28 Treas. Dec., 906).

[2] Modified September 28, 1915, so as to affirm in part and reverse in part, in accordance with stipulation of counsel.

Before MONTGOMERY, SMITH, BARBER, DEVRIES AND MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These are appeals from two decisions of the Board of General Appraisers. The importations were of beaded articles in several forms: (1) Tunics composed of lace nets, beaded, without following any figure or design; (2) motifs, garnitures, and gimps of beads with net foundation, the beads forming designs of various forms, the entire being ready to be applied to garments, and also running lengths or strips of such beaded designs likewise on net foundations ready to be applied to garments.

It is conceded by all parties that the merchandise is in chief value of beads.

The merchandise was assessed for duty by the collector at the port of New York under the provisions of paragraph 358 of the tariff act of 1913, in the words—

358. Laces, * * * wearing apparel, * * * and all articles or fabrics * * * appliquéd, * * * any of the foregoing by whatever name known; * * * nets, nettings, veils, veilings, * * * ornaments; * * * trimmings not specially provided for; * * * and articles made in whole or in part of any of the foregoing fabrics or articles; all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem.

Protestants made claim that they are properly dutiable under the provisions of paragraph 333 of said act, reading:

333. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, 35 per centum ad valorem; curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, 50 per centum ad valorem.

The board overruled the protests, assigning as the reason therefor that the merchandise was wearing apparel or articles appliquéd, and therefore excluded from the provisions of paragraph 333 by its excepting terms. The importers appeal.

In this court the Government claims that the merchandise described in our class (1), and equally embraced in our class (2), dutiable as wearing apparel, appliquéd; the motifs, garnitures, gimps, and the beaded strips, described in our class (2), dutiable as ornaments or trimmings; and that if the foregoing are not so classifiable they are dutiable as articles made wholly or in part of some of the fabrics and articles named in said paragraph 358.

The first question presented therefore is, Can this merchandise be said to be articles appliquéd, as that term is used in both the foregoing quoted paragraphs?

We think not. This court in a recent decision, United States v. Hamburger Levine Co. (5 Ct. Cust. Appls., 217; T. D. 34382), interpreted that very term. The lexicographic definitions and scientific

authorities were carefully reviewed and a definitive excerpt by Fisch'er, G. A., based upon the ordinary and trade meaning of the term in Thorp's case, G. A. 4481 (T. D. 21375), adopted by the court as the accepted meaning of the phrase, to wit:

This merchandise corresponds with the definition given to the word "appliqué" by all the standard dictionaries and with the trade understanding. The general definition is: Ornamentation with a pattern, which has been cut out of another color or stuff, applied or transferred to a foundation.

In one of these appeals the record contains much trade testimony upon this point which in every wise confirms the conclusion, said by the board in the cited case to have been likewise reached, and approved as stated by this court. That interpretation of the phrase, therefore, should be regarded as *stare decisis.* Tersely stated, an article or wearing apparel appliquéd, within the tariff sense, is such ornamented with a pattern or design which has been cut out of another color or stuff; or, to the same effect otherwise independently fabricated and applied or transferred to another article or fabric. The idea and requirement of a union of two independent fabrications is essential and determinative. The motifs, and probably other of these importations, may well be termed and undoubtedly are "appliqués," but the call of the statute is not for such, but for "articles" or "wearing apparel" "appliquéd"—that is, such an article or wearing apparel with these appliqués thereto sewn or applied.

The unimpeached and uncontradicted testimony herein is that no part of these importations is so constructed, but that instead of motifs or designs being independently constructed and thereafter applied upon the net foundation, article, or fabric, these beaded effects are attained by sewing the beads one by one in or upon the net. Suffice the purposes of the present case to say that without this distinction there could be but few, if any, beaded articles that would not fall within paragraph 358 as articles appliquéd, with the result of a construction practically reading paragraph 333 from the act. Indeed, it is difficult to conceive, in the absence of the differentiation had, what considerable number of articles could be held in chief value of beads as designated in paragraph 333, for certainly the distinction that in some cases they are fed in the loom during weaving and in the other thereafter by being sewn in or upon the fabric is more a matter of manipulation than material difference and substitutes the exception for the well known usual and ordinary construction and character of beaded articles. Without, however, indulging or resting the case upon any polemic refinements, the point is determined by the broad and well-settled doctrine announced by the court in United States *v.* Hamburger Levine Co., *supra,* and we hold the merchandise not articles or wearing apparel appliquéd within the terms of either

paragraph 333 or 358. They are not, therefore, excluded by its extruding terms from paragraph 333.

The inquiry thus presented as to which of these paragraphs is in its competitive language the more germane will be furthered by bearing in mind the legislative course upon the subject matter.

Throughout many tariff acts nets and nettings, laces, embroideries, wearing apparel, ornaments, trimmings, and articles and fabrics, whether or not beaded, have been separately classified for dutiable purposes as distinct and different tariff entities, sometimes at the same and at other times different rates of duty. See tariff act of 1894, paragraphs 301 and 304; tariff act of 1897, paragraphs 339 and 408; tariff act of 1909, paragraphs 349 and 421. The tariff act of 1913 being a revision of that of 1909 obviously continued this policy. By the act of 1909 beaded articles were provided for in paragraph 421 as follows:

421. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; fabrics, nets or nettings, laces, embroideries, galloons, wearing apparel, ornaments, trimmings, curtains, fringes, and other articles not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, but not in part of wool, sixty per centum ad valorem: * * *.

Contrasted and enacted therewith was paragraph 349, as follows:

349. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces or in imitation of lace; nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flutings, quillings, embroideries, trimmings, braids, featherstitch braids, edgings, insertings, flouncings, galloons, gorings, bands, bandings, belts, beltings, bindings, cords, ornaments, ribbons, tapes, webs, and webbings; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped, by hand or machinery, for any purpose, or from which threads have been drawn, cut, or punched to produce openwork, ornamented or embroidered in any manner herein described, in any part thereof, however small; hemstitched or tucked flouncings or skirtings; all of the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, or of cotton, flax, or other vegetable fiber and india rubber, or of cotton, flax, or other vegetable fiber, india rubber, and metal, and not elsewhere specially provided for in this section, sixty per centum ad valorem: * * *.

It may be noted in passing that while the latter paragraph was, in the act of 1909, confined to goods in chief value of the textiles, as was the corresponding paragraph in many preceding tariff acts, at the same time there was in the silk schedule of that (paragraph 402) and many preceding acts a similar paragraph relating to similar silk enumerations expressly confined to goods in chief value of silk.

The relative contexts plainly indicate paragraphs 333 and 358 of the act of 1913 are substitutes for 421 and 349 of the act of 1909.

A comparison of said paragraphs 333 and 421 manifests beyond question the purpose of Congress to provide in the former for all articles and materials included within the latter at a reduced rate of duty.

So the omission from the silk schedule of the customary provision therein for laces and the usually associated enumerations, and the substitution in paragraph 358 of the words "all of the foregoing of whatever yarns, threads, or filaments composed" for the habitual language confining the same to articles and fabrics in chief value of textiles, indicates a purpose of Congress to extend 358 to silk articles and fabrics. The same provision, however, so extending the paragraph must be limited in its enlarging scope by its words, which certainly confine the application of the paragraph to those articles and fabrics · composed of "yarns, threads, or filaments." Additional significance is added in that in this readjustment and recodification of these paragraphs Congress dropped the provisions of paragraphs 349 and 402 of the act of 1909, including therewithin goods in part of other materials, such as rubber and metal, and particularly the provisions for "silk goods ornamented with beads or spangles," provided in said paragraph 402. The fact that paragraph 358, act of 1913, is the substitute for paragraphs 349 and 402 of the act of 1909, and drops therefrom the provision for "goods ornamented with beads or spangles" in said paragraph 402, thereby failing, not to say refusing, to carry it into the revised paragraph (358) and expressly confining the provisions relating to that subject matter to paragraph 333, does not leave the congressional purpose clothed with much doubt. Bearing in mind, therefore, the amended act, and reading together all the amending provisions, we think the congressional purpose clear to provide by paragraph 333 for all articles in chief value of beads, and by paragraph 358 for the therein enumerated articles in chief value of threads, yarns, and filaments.

The familiar rule of statutory construction—*ejusdem generis*—leads to the same conclusion. When we consider that of the approximately forty *eo nomine* or specific enumerations employed in paragraph 358, many of which by reason of their general character, such as "all other articles" and similar expressions, clearly embrace an incalculable variety of well-known articles, and, that but two of those enumerations, "ornaments" and "trimmings," could possibly refer to articles not in chief value of yarns, threads, or filaments, we do not hesitate to hold that if there was ever warrant or requirement in the history of statutory construction to apply the rule of *ejudem generis* it is presented by this paragraph.

While these considerations bear directly upon and we think warrantably determine the interpretation to be placed upon the words "ornaments" and "trimmings," in view of the urgent insistence of

the Government that, at least, the motifs, garnitures, gimps, and running strips are within one or both of these designations, as used in paragraph 358, we will advert to other considerations. The necessary corollary of this contention is that these words as here employed embrace for dutiable purposes all ornaments and trimmings of whatever materials composed not otherwise more specifically provided for in the act.

Let us test the invoked interpretation by its results. There is a long and well-settled distinction between textiles and filamentary ornaments and trimmings as provided for in tariff acts, as may well be assumed from the repeated conjoint use of the words. The distinction was observed and is defined in United States v. Garrison (T. D. 25072), affirmed by the Circuit Court of Appeals for the Second Circuit. By probably an oversight the customary word "ornaments" was omitted from paragraph 390 of the tariff act of 1897. Cord and braid in openwork designs intended for use as ornaments of women's dresses, and known in trade as "garnitures" or "hussar sets," were by the board held "trimmings," it being stated that the omission of the word "ornaments," formerly associated therein with "trimmings," from the paragraph by Congress indicated a purpose to classify the goods falling therewithin as "trimmings." The Circuit Court for the Southern District of New York reversed the decision of the board, saying:

The division between narrow goods of various kinds sold by measure for elaboration and those made up and sold separately for ornamentation seems to prevail in trade, leaving the former as trimmings and the latter not. The dropping of the word "ornaments" from the act of 1897 does not indicate that what would be ornaments are to be trimmings, rather than manufactures of anything else, for which apt words are retained, or otherwise seems to show that the well-established distinction between trimmings and other articles was intended to be removed.

On appeal this decision of the Circuit Court was affirmed by the Circuit Court of Appeals (T. D. 25072). See also G. A. 5664 (T. D. 25254). A trimming may become the material out of which an ornament is made. G. A. 5460 (T. D. 24756):

Let us, however, test the soundness of the broad interpretation of these words contended for by the Government by its effect upon other parts of the act. It will readily be seen that it would cause these terms to reach out into numerous other paragraphs of the act, and, if not render them idle, result in anomalous and ridiculous results.

*Ornaments.*—In proceeding let us bear in mind that the only ornaments provided by this designation in the tariff act of 1913, other than in paragraph 358, are millinery, military, and hair ornaments, *composed of metal,* valued at over 20 cents per dozen under paragraph 356. Hence all such ornaments valued at less than 20 cents per dozen, and all those millinery, military, and hair ornaments

not "composed of metal" and not more specifically provided for in paragraph 347, of which there are many, would be more specifically provided for and dutiable as "ornaments" under paragraph 358. Why exclude expressly those under 20 cents per dozen in value from the 60 per centum rate under 356 if they are thrown under the 60 per centum rate of 358?

The following would also seem in that view to be so classifiable: Christmas-tree ornaments consisting of glass balls such as otherwise would be dutiable as manufactures of glass (T. D. 21509) and all other such not more specifically provided for. Earthenware and chinaware ornaments consisting of artificial animals if not fruits. G. A. 5996 (T. D. 26235). Decorated and hand-painted earthenware, ornamental plaques, and other designs. Abstract 19150 (T. D. 29073), G. A. 5774 (T. D. 25536). Hair ornaments of celluloid, tortoise shell, gallilith and all other materials not constituting them jewelry, as well as gallilith belts. United States *v.* B. Altman & Co. (6 Ct. Cust. Appls., 131; T. D. 35390). Military and all ornamental buttons and buckles not composed of metal or for utility. G. A. 6438 (T. D. 27608). Paragraph 347 would be invaded for all millinery ornaments not therein named *eo nomine;* paragraph 356 for all articles not commonly or commercially known as jewelry and therein descriptively included, as above more definitely stated; paragraph 368 for all ornaments therein descriptively included and not millinery ornaments within paragraph 347; paragraph 369 of all ornaments made of manufactures of ivory, mother-of-pearl, shell, plaster of Paris, papier-mâché, and india rubber, of which there readily occurs to the mind an infinite variety and number; all ornaments not works of art within paragraph 376 would likewise be claimed; paragraph 325 of all paper and cardboard ornaments of every description not *eo nomine* therein named, and every other paragraph of the act including within its terms by general description ornaments would likewise be invaded.

*Trimmings.*—The same general considerations apply in giving the word "trimmings" this broad definition as applied to "ornaments." Every descriptive catch-all clause and every paragraph of the act the language of which is less specific than the word "trimmings," regardless of the composition of the materials therein described, would under this construction yield to the high rates of duty imposed by paragraph 358. Of these may be enumerated paragraphs 257, 258, 262, 314, 319, 335, 347, and 368.

It would be difficult to conceive of a tariff ruling that would effect more incongruous and inconsistent results in administration of the law. On the other hand, accepting the obvious purpose of Congress to rate beads and beaded articles at 35 per cent whenever in chief

value of such, as expressed by its collocation, within paragraph 333, the beaded articles provisions of the amended act (1909), and confining paragraph 358 to goods in chief value of laces, nets, embroideries, trimmings, and similar high-class manufactures, adopts a differentiation clearly within the purpose of Congress and founded upon a clearly defined commercial distinction.

We are therefore driven to the interpretation adopted, that the articles and fabrics within paragraph 358 must be in chief value of threads, yarns, or filaments, of which these goods are not; but, that being in chief value of beads, they fall for dutiable purposes within paragraph 353.

Another consideration is presented. Assuming that the more specific enumerations in paragraph 358, by the rules announced or any of them, exclude the whole or a part of these goods, and assuredly a part are so excluded, and that, nevertheless, they fall by such exclusion within the clause therein, "articles made in whole or in part of any of the foregoing fabrics or articles"; and, further, assuming that the final clause and the construction given the paragraph, would relate the requirement of chief value of yarns, threads, or filaments to the minor part alone of such articles; the query is presented, Would that provision in that view prevail over paragraph 333 as to these importations? We think not, for the reason that the applicable provision of paragraph 333 is the more specific.

The status would be, the merchandise is in chief value of beads, with a minor part of silk or cotton nettings. The competing provisions are:

Articles made in whole or in part of any of the foregoing fabrics or articles.

Curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles.

(1) If we compare the subjects we have in 358 the unqualified word "articles," which includes all such in the world, unlimited; while in 333 we have "articles," less curtains and less all embroidered and appliquéd articles. Comment is unnecessary.

(2) The predicating language in paragraph 358 is "wholly or in part of;" in 333 "wholly or in chief value of." Obviously, the latter is mathematically more specific than the former, for if *any part* of an article is as predicated it falls within the former, while it takes the *major part* thereof in value to so fall within the latter. In other words, the latter applies only when an article in content more than half in value falls therewithin, while the former is satisfied with much less, if any part falls therewithin. Therefore, the latter is the more narrow because the less easily satisfied.

(3) Measured by the objects of the predication, paragraph 358 is predicated of "any of the foregoing fabrics or articles" of which, suffice for this purpose, approximately 40 are *eo nomine* or specifically

mentioned, while 333 is predicated of but two—beads and spangles, mentioned *eo nomine.*

So, if measured by the subject matter without abstract regard to the language of the competing provisions, paragraph 333 *eo nomine* includes "beads" and these articles are beads, while paragraph 358 refers to and includes nets not *eo nomine* but as one of a class *descriptively embraced* in the language of the competing provision as one of the "foregoing fabrics or articles."

The highest authority uniformly quoted ever since rendition in 1890 as a precedent that "wholly or in part of" is less specific than "wholly or in chief value of" is Hartranft *v.* Meyer (135 U. S., 237). In that case the court said:

> We turn rather to the character of the descriptive language used in the one (paragraph), it being more general than the other.

As stated by this court (Barber, Judge) in United States *v.* Vandegrift & Co. (3 Ct. Cust. Appls., 161, 163; T. D. 32457):

> This case is authority for the proposition that the term "manufactures composed wholly or in part of wool" is less specific than the term "manufactures of which silk is the component material of chief value." Upon that question it is, and by reason of its convincing logic should be, conclusive, and has been so regarded. United States *v.* Johnson (154 Fed., 752); United States *v.* Johnson (157 Fed., 754); United States *v.* Slazenger (113 Fed., 524).

A few of the very numerous instances wherein the doctrine has been applied are Solomon *v.* Arthur (102 U. S., 208, 212); United States *v.* Johnson & Co. (154 Fed., 753); United States *v.* Johnson (157 Fed., 754); United States *v.* Slazenger (113 Fed., 524); Brister *et al. v.* United States (59 Fed., 452); Magone *v.* American Trading Co. (57 Fed., 394; Slazenberg *et al. v.* United States (91 Fed., 517); United States *v.* Vandegrift & Co. (3 Ct. Cust. Appls., 161; T. D. 32457); United States *v.* Burne (4 Ct. Cust. Appls., 298; T. D. 33515); Darlington & Co's. case, G. A. 2746 (T. D. 15312); W. & J. Sloane's case, G. A. 4123 (T. D. 19227); Benjamin & Saspary's case, G. A. 4441 (T. D. 20993); Cochran & Co's. case, G. A. 4569 (T. D. 21652); J. W. Hampton, jr., & Co's. case, G. A. 4724 (T. D. 22360); Rumpp & Son's case, G. A. 5071 (T. D. 23490); Hempstead & Son's case, G. A. 5301 (T. D. 24301); Tuska's case, G. A. 5451 (T. D. 24736).

Nor is the case of United States *v.* Guthman, Solomons & Co. (159 Fed., 273) nor Metzger *v.* United States (146 Fed., 132), cited in the former as a precedent of its ruling, in the least in conflict with this doctrine. Both of these cases, as was the case in United States *v.* Vandegrift & Co. (3 Ct. Cust. Appls., 161; T. D. 32457), conceded and reaffirmed the asserted doctrine. Each of those cases went off on the point that in this legal status an *eo nomine* or more specific *subject* of the sentence controlled over a more general descriptive one.

In the Guthman, Solomons & Co. case the competing provisions were *"articles * * * in part of beads"* against *"manufactures of leather * * * or of which (leather) is the component material of chief value."* The *subject,* being *eo nomine,* prevailed against a *descriptive* one, of course. It was a more confined provision. But in this case, as we have seen, the exact converse obtains.

The remaining element of relative specificity is the presence of the words "and not specially provided for" in paragraph 333, and their absence from 358. We have already seen that aside from this phrase the pertinent language of paragraph 333 is the more specific. The doctrine in that situation was stated and numerous supporting authorities cited in Knauth, Nachod & Kuhne v. United States (4 Ct. Cust. Appls., 58; T. D. 33307) as follows:

> That the words "not specially provided for," following "calfskins tanned or tanned and dressed," do not lessen the relative specificity of the modified *phrase itself* when contrasted with other competing provisions of the law is well settled.   Arthur v. Lahey (96 U. S., 112); Hensel v. United States (2 Ct. Cust. Appls., 221; T. D. 31951); United States v. Schwarz (140 Fed., 989); United States v. Knauth, Nachod & Kuhne (150 Fed., 610); Hall et al. v. United States (136 Fed., 774); Thomas v. Wanamaker (129 Fed., 92); Faxon v. Russell (154 U. S., 644); Arthur v. Rheims (96 U. S., 143); Arthur v. Davies (96 U. S., 135).

The same rule was applied by this court in the recent case of W. N. Proctor Co. v. United States (6 Ct. Cust. Appls., 119; T. D. 35387).

The principle is very succinctly stated by Judge Lacombe, speaking for the Circuit Court of Appeals of the Second Circuit, in United States v. Albert Lorsch & Co. (158 Fed., 398, 399), stating:

> The group of articles known as "diamonds and other precious stones" includes many different species. When Congress selects by name one of these species, and provides that manufactures of that particular stone shall be dutiable at a different rate, it so clearly indicates its intention to withdraw the article from the general, as soon as has become a completed manufacture, that the absence of the words "not specially provided for" in the paragraph covering the group is not particularly significant.

We are, therefore, of the opinion that the quoted provision of paragraph 333 is more specific than the stated part of paragraph 358. It follows that the decisions of the Board of General Appraisers should be and are *reversed.*