(C. D. 1390)

INTERNATIONAL EXPEDITERS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 19, 1952)

*Wallace & Schwartz (Barnes, Richardson & Colburn* by *Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

OLIVER, Chief Judge: The merchandise involved in this case consists of certain articles described as "Cathode Ray Tubes," concededly in chief value of glass. These tubes are used in television receivers, being the article which receives the electrical impulses from the sending apparatus and converts them into light rays, projecting them in the form of images on the glass top of the tube.

A sample of the imported article was received in evidence (plaintiff's exhibit 1). These tubes resemble in general appearance a gigantic flashlight. The sample before us measures approximately 1½ inches in diameter at the base, which is made of what appears to be hard rubber or some plastic material. From the base, there protrude several steel prongs similar to those used to make contact on a standard type radio tube. The glass portion of the tubes is inserted into this base. A glass column of approximately the same diameter as the base extends for approximately 6¾ inches to a point where it flares out at an angle of approximately 45° for about 18 inches at which point it straightens out for about 2½ inches. The outer edge is rounded and the entire front of the tube presents the milky-white appearance of the ordinary television screen—which it actually is. From a point about 3 inches back from the top (screen) portion of the tube, the entire outer surface of the flared-out portion is coated with a dark-gray material. A part of the straight portion, running from the base of the flared-out section to the base, is coated on the inside with a substance likewise dark gray in color. The entire tube measures approximately 18 inches overall. When in use, the tube is set in the television receiving set horizontally, so that the top becomes the viewing screen on which the picture is projected and viewed.

These tubes were classified for duty at 30 per centum ad valorem as articles composed in chief value of glass under the provisions of paragraph 218 (f) of the Tariff Act of 1930, as modified (T. D. 51802). They are claimed to be properly dutiable at 15 per centum ad valorem under paragraph 216 of the same act, as modified (T. D. 51802), as articles composed in part of graphite.

The competing paragraphs, insofar as pertinent, read as follows:

PAR. 218. (f) * * * all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise * * *, 60 per centum ad valorem. [Modified rate, 30 per centum ad valorem.]

PAR. 216. * * * articles or wares composed wholly or in part of * * * graphite * * *, not specially provided for, 45 per centum ad valorem. [Modified rate, 15 per centum ad valorem.]

The General Agreement on Tariffs and Trade, T. D. 51802, modified the rates provided for in the paragraphs here in question, as indicated.

The only evidence in this record is the testimony of plaintiff's witness Renskers who was the tube application engineer employed by the Belmont Radio Corp., Chicago, Ill., for whose account entry was made. It manufactures radio and television receivers. He testified that the function of the cathode ray tube (plaintiff's exhibit 1) is to reproduce the picture in the television receiver. The top of the tube becomes the viewing screen when the set is functioning. The tube consists of certain essential elements, the first of which is a so-called electron gun which extends through the neck of the tube. The purpose of the "gun" is to project a narrow stream of electrons toward the screen. The screen itself "throws a fluorescent or luminescent material" when struck by the stream of electrons and gives a light at the point where the electrons strike the screen. In this cathode ray tube, an electromagnetic field is used to reflect the electron beam so that it will move across the screen as the current in the electromagnetic coils is varied. When the electrons leave the cathode and start toward the screen, they are propelled with considerable velocity and when they strike the screen "they have no place to go," unless controlled, and the screen would then have too many electrons, actually a cloud, which would pile up and prevent the formation of a picture. It is essential, therefore, to take away such a cloud of electrons so as to allow the electron beam to strike the screen without interference and without hitting any other electrons (R. 9). For that purpose, the inside of the flared portion of the tube is covered with a conductive coating which is maintained at a very high voltage. Because the face of the tube gives light, the coating must be of a dull or dark color and must also be conductive. Normally, a carbon compound is used, the most common being solutions of colloidal graphite. The conductive coating on the inside of the tube is essential to the operation of the tube to disperse the cloud of electrons. There is also graphite on the outside, the purpose of which is "to act as a filter capacity for the high voltage which is being applied to the inner conductive coating thereby eliminating additional components in the rest of the television receiver." (R. 11, 12.)

The issue before us is one of law, namely, whether the provision in paragraph 218 (f) of the Tariff Act of 1930 for "articles  *  *  * composed wholly or in chief value of glass  *  *  * " is more specific than the provision in paragraph 216 of the said act for "articles or wares composed wholly or in part of  *  *  * graphite *  *  *." The plaintiff contends that the above provision in paragraph 216 is more specific and that the cathode ray tubes here in question are properly dutiable under that paragraph. The Government maintains that the provision for articles wholly or in chief

value of glass in paragraph 218 (f) is more specific and that, therefore, the collector's classification should be sustained.

The precise question involved herein was before this court in *International General Electric Co., Inc.* v. *United States,* 11 Cust. Ct. 137, C. D. 811. That case also involved a "Cathode Ray Tube," concededly in chief value of glass, used for the same purpose and performing the same function as the article at bar. There, as here, the plaintiff established that the graphite on the tubes was essential to their proper functioning. The merchandise there was classified for duty, as here, as articles composed in chief value of glass (paragraph 218 (f), Tariff Act of 1930). They were there claimed properly dutiable, as in the present case, under paragraph 216 as articles composed in part of graphite. The Government, while not seeking to uphold the collector's classification, contended that the merchandise was properly dutiable under paragraph 218 (a) of the act covering "all scientific articles, and utensils, whether used for experimental purposes * * * or otherwise * * * wholly or in chief value of glass" and that, being a use provision, it should prevail over a provision covering articles composed either in "chief value" or "wholly or in part" of a material. The court there held in the first instance that the record failed to establish that the tubes in question were used in pure science but that it indicated they were used in commercial pursuits and, accordingly, were not scientific articles within the meaning of that term in paragraph 218 (a) of the act (*W. L. Conover* v. *United States,* 17 C. C. P. A. (Customs) 324, T. D. 43743) as claimed by the Government. The court overruled plaintiff's contention that as between a provision for articles composed "wholly or in chief value of" and a provision for articles composed "wholly or in part of" some material, the latter provision should prevail. The court held that a provision covering "component material of chief value" would prevail over a provision for "wholly or in part of" a material. (*Hartranft* v. *United States,* 135 U. S. 237.)

In our decision in the *International General Electric Co., Inc.,* case, *supra,* we pointed out that a distinction had been drawn between the wording "*articles* composed in part of" and "*manufactures* of which * * * is the component material of chief value" and that in such a case the word "articles" had been held to be more specific than "manufactures of." *Louis Metzger & Co.* v. *United States* (146 Fed. 132); *United States* v. *Guthman, Solomons & Co.* (159 Fed. 273); *Calumet Manufacturing Co.* v. *United States* (44 Treas. Dec. 403, T. D. 39938, G. A. 8722); *Bough* v. *United States,* 14 Ct. Cust. Appls. 60, T. D. 41575; and *United States* v. *Foo Chow Importing Co.* (51 Treas. Dec. 321, T. D. 42055). We likewise cited with approval the decision of our appellate court in *Loewenthal & Co.* v. *United*

*States* (6 Ct. Cust. Appls. 209, T. D. 35464) wherein that court discussed the relative specificity between a provision "wholly or in part of" and one "wholly or in chief value of."

In the *Loewenthal* case, *supra*, the issue involved the provision in paragraph 358 of the Tariff Act of 1913 for "articles wholly or in part of" and that in paragraph 333 of the same act for articles "wholly or in chief value of." The court there stated, page 216:

> The predicating language in paragraph 358 is "wholly or in part of;" in 333 "wholly or in chief value of." Obviously, the latter is mathematically more specific than the former, for if *any part* of an article is as predicated it falls within the former, while it takes the *major part* thereof in value to so fall within the latter. In other words, the latter applies only when an article in content more than half in value falls therewithin, while the former is satisfied with much less, if any part falls therewithin. Therefore, the latter is the more narrow because the less easily satisfied. [Italics quoted.]

In support of its present claim, the plaintiff relies upon the decision of our appellate court in *United States* v. *Garlock Packing Co.* (32 C. C. P. A. (Customs) 79, C. A. D. 289). That case involved an appeal from a judgment of this court wherein certain engine packing composed in chief value of asbestos yarn, 2 per centum or more of graphite, and varying percentages of oil, was held dutiable under the provision for "manufactures" of asbestos yarn at 20 per centum ad valorem under paragraph 1501 (a), Tariff Act of 1930, as modified, rather than as "articles" composed wholly or in part of graphite, not specially provided for, at 30 per centum ad valorem under paragraph 216 of the same act, as modified. In reversing the trial court, our appellate court stated, pp. 82–83:

> It is contended here by counsel for the Government that the provision for articles composed wholly or in part of graphite is a more specific designation for merchandise like that here involved than is the provision for manufactures of yarn, slivers, etc., of asbestos and any other spinnable fiber; that the term "articles" is more specific than the term "manufactures"; that the provision for "manufactures" is not an *eo nomine* designation but is a "catch-all provision" and one of general description only; and that, therefore, the clause "not specially provided for" contained in paragraph 216, *supra*, which does not appear in paragraph 1501 (a), *supra*, does not affect the relative specificity of the competing provisions.
>
>     \*       \*       \*       \*       \*       \*       \*
>
> The term "articles," as used in paragraph 216, *supra*, is a more specific designation than the term "manufactures of," as used in paragraph 1501 (a), *supra*. *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T. D. 41575, and cases therein cited. Accordingly, we are of opinion that the provision for articles or wares, composed wholly or in part of graphite, contained in paragraph 216, *supra*, although accompanied by the clause "not specially provided for," is a more specific designation for the merchandise here in question than is the provision for manufactures of yarn of asbestos or of asbestos and any other spinnable fiber, contained in paragraph 1501 (a), *supra*.

The *Garlock* case is not controlling in the present case. There, the competition was between the general descriptive provisions of paragraph 1501 (a) for all *"manufactures"* of any of the "foregoing" (that

is, yarn of "asbestos, or of asbestos and any other spinnable fiber") and the provision contained in paragraph 216 of the act for "articles * * * composed wholly or in part of * * * graphite." In the present case, the involved cathode ray tubes were classified as "*articles*" composed in chief value of glass and not as "manufactures" of glass. The issue here is different from that involved in the *Garlock Packing Co.* case, *supra.*

The cathode ray tubes in question are composed in part of graphite (paragraph 216), *supra*, but they are also conceded to be composed in chief value of glass (paragraph 218 (f)), *supra.* Accordingly, under the authorities above cited, we hold that the merchandise here involved is more specifically provided for under paragraph 218 (f), as modified, *supra*, as *articles* "composed wholly or in chief value of glass" rather than under the provision in paragraph 216 of the act for *articles* "composed wholly or in part of * * * graphite." The protest is overruled and judgment will be issued accordingly.

### CONCURRING OPINION

Cole, Judge:   This case was heard and submitted before a single judge while on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division.   Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of the case, and concur in the opinion and judgment attached thereto.