(C.D. 2092)

JACK AND JILL TOGS, INC. *v.* UNITED STATES (W. T. GRANT CO., PARTY IN INTEREST)

United States Customs Court, Second Division

(Decided June 5, 1959)

*Lamb & Lerch* (*John G. Lerch* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Alfred A. Taylor,* trial attorney), for the defendant.
*Sharretts, Paley & Carter* (*Howard Clare Carter* and *W. R. Johnson* of counsel) for the party in interest.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Plaintiff, a domestic manufacturer of children's wear, has invoked the provisions of section 516(b) of the Tariff Act of 1930, as amended, 19 U.S.C. section 1516(b), to protest the collector's classification of an importation of cotton corduroy overalls, etc., within the provisions of paragraph 919 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for wearing apparel, in chief value of cotton, with the consequent assessment of duty at the rate of 20 per centum ad valorem.

It is here claimed that said merchandise is properly dutiable at the rate of 50 per centum ad valorem, by virtue of the provision in paragraph 909 of said act, for articles, made or cut from pile fabrics, such as corduroy.

In the cited statutory provisions, the following is provided:

[Section 1516(b)]

Classification

(b) The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. * * * If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated. Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. * * *

PAR. 909. Pile fabrics (including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton, and all articles, finished or unfinished, made or cut from such pile fabrics, all the foregoing, if velveteens or velvets, 62½ per centum ad valorem; if corduroys, plushes, or chenilles, 50 per centum ad valorem; if terry-woven, 40 per centum ad valorem.

Paragraph 919, as modified, *supra*:

Clothing and articles of wearing apparel of every description,
  manufactured wholly or in part, wholly or in chief value of
  cotton, and not specially provided for:

|  |  |
|---|---|
| Coats valued at $4 or more each; vests valued at $2 or more each; dressing gowns, including bathrobes and beach robes, valued at $2.50 or more each; underwear valued at 75 cents or more per separate piece; and pajamas valued at $1.50 or more per suit _____ | 10% ad val. |
| Other _____ | 20% ad val. |

Except as indicated, *infra*, it is not disputed that the procedures outlined in said section 516(b) were followed by plaintiff to perfect its right to protest, and the requisite documents, or copies thereof, indicating compliance with the statutory directions, are in evidence as plaintiff's exhibits 1–A—1–F, respectively. The protest itself has been moved into evidence by the party in interest and marked exhibit A.

By reason of the fact that the documents representing plaintiff's complaint (exhibit 1–C), plaintiff's declaration of intent to protest (exhibit 1–E), and the protest are signed in the following manner:

> JACK AND JILL TOGS, INC.
> By Irving Tucker
>   President
> BY: LAMB & LERCH, Attorneys
>   ·25 Broadway
>   New York 4, N.Y.
>   J. G. Lerch [handwritten]

counsel for W. T. Grant Co., the party in interest and importer of the merchandise at bar, has moved to dismiss the protest, on the general ground that full compliance with the provisions of section 516(b), *supra*, has not been shown. Specifically, it is asserted that an American manufacturer's protest, and qualifying documents, must be made by a domestic manufacturer, producer, or wholesaler, and that the signature of an attorney, in his representative capacity as agent for a disclosed principal, constitutes a fatal jurisdictional defect. Counsel urges that the right of an American manufacturer to protest the classification of imported merchandise is a grant of an extraordinary privilege which must be strictly construed against the grantee, citing *Porcelain Enamel Institute* v. *United States* (*Langlotz & Co., Inc., Party in Interest*), 64 Treas. Dec. 478, T.D. 46713.

We have carefully considered the cited case, as well as other decisions bearing upon this question, and are of opinion that the weight of authority sustains the view that where the protestant is, in fact, an American manufacturer, producer, or wholesaler, whose name is disclosed, signature by an attorney as agent for his principal constitutes a compliance with the statute. *American Mfg. Co.* v. *United States (Mente & Co., Party in Interest)*, 68 Treas. Dec. 726, T.D. 48018; *American Manufacturing Co.* v. *United States (Burka Bagging Co., Party in Interest)*, 69 Treas. Dec. 97, T.D. 48096; *The Manufacturers and Producers of Goat, Sheep and Cabretta Leathers, etc.* v. *United States, American Express Co., et al., Parties in Interest,* 21 C.C.P.A. (Customs) 591, T.D. 46996.

The power of an attorney to file the requisite documents as agent for his principal, a *bona fide* American manufacturer, is not, as urged by counsel for the party in interest during the course of trial, negated by the different expressions in section 514 of the Tariff Act of 1930, authorizing an importer's protest. There, it is provided that a protest may be filed by "the importer, consignee, or agent of the person paying such charge or exaction." This language, we perceive, enables a consignee or agent to file a protest in his own name, but does not touch upon the authority of an agent to act in behalf of a designated principal. Whereas, the absence of similar phraseology in section 516(b) might operate to invalidate an American manufacturer's protest filed in the name of an agent, it may not be construed as evidence of a congressional proscription against an agent's appearance in a representative capacity for and in behalf of a named American manufacturer, producer, or wholesaler.

The motions to dismiss predicated upon the above-mentioned alleged jurisdictional defects are, therefore, overruled.

Plaintiff's quarrel with the collector's classification of the merchandise at bar rests upon the contention that the provision in paragraph 909, *supra*, for all articles, finished or unfinished, made or cut from pile fabrics, such as corduroy, is more specific than the provision in paragraph 919, *supra*, for articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for. It is asserted that by reason of the phrase "not specially provided for" in the latter provision, only those items of wearing apparel, in chief value of cotton, not made or cut from pile fabrics, are embraced within said paragraph 919, especially since paragraph 909 encompasses all articles, made or cut from pile fabrics.

Setting aside for the moment the effect on the respective provisions of the phrase "not specially provided for," it seems clear that the words "all articles" are terms of great comprehensiveness which serve to gather within their scope items of many types and kinds, subject, of

course, to their having been made or cut from pile fabrics, such as corduroy. On the other hand, the phrase "wearing apparel" must be construed as culling from the broad category of corduroy articles, those only which are fit for use as clothing.

Notwithstanding the testimonial record herein which tends to show that more items of children's wear are made from cotton fabrics which are not corduroy than from corduroy fabrics, we do not believe that the term, wearing apparel in chief value of cotton, is *per se* broader in coverage than the provision for all articles, made or cut from corduroy.

The law is well settled that the provision for wearing apparel is a designation of a class of articles in accordance with their use, of a kind which, in the absence of a shown contrary legislative intent, ordinarily prevails over one of composition or of general description. *United States* v. *Snow's United States Sample Express Co.*, 6 Ct. Cust. Appls. 120, T.D. 35388; *F. R. Tripler & Co. (Inc.)* v. *United States*, 61 Treas. Dec. 1127, T.D. 45699; *Joseph Horne Co.* v. *United States*, 61 Treas. Dec. 1480, Abstract 19135; *Bata Shoe Co., Inc.* v. *United States*, 6 Cust. Ct. 50, C.D. 423; *P. Pavel & Co.* v. *United States*, 8 Cust. Ct. 337, C.D. 633.

Insofar as the competition existed between the same two provisions as are here involved, the *Tripler*, *Horne*, and *Bata Shoe Co.* cases, *supra*, establish that the provision for wearing apparel is the more specific. What then is the effect of the phrase "not specially provided for" in said paragraph 919? In the *Tripler* case, it was held that this phrase did not deprive the provision for wearing apparel of the restrictiveness it might otherwise possess, the court stating:

It will be noticed that the provision for cotton wearing apparel of every description is qualified by the phrase "not specially provided for," while there is no such limitation in the competing provision. The rule as laid down by the courts is that, where there are two provisions otherwise equally applicable to imported merchandise and only one is qualified by the phrase "not specially provided for," the presence of such phrase then operates to transfer the classification of the merchandise to the provision not so limited. Note *United States* v. *Snow's U.S. Sample Express Co.*, 6 Ct. Cust. Appls. 120, T.D. 35388, and cases therein cited. Under authority of the same decision, however, we are bound to hold that the two provisions here under consideration are not otherwise equally applicable, but that the one for cotton wearing apparel of every description is more specific than that for articles made or cut from cotton-velvet pile fabrics, and that the phrase "not specially provided for" qualifying the one provision is of no controlling effect in the present instance.

It is urged, however, that the more recent cases of *M. Pressner & Co.* v. *United States*, 42 C.C.P.A. (Customs) 48, C.A.D. 568, and *United States* v. *Lansen-Naeve Corp.*, 44 C.C.P.A. (Customs) 31, C.A.D. 632, represent a departure from this view which requires a contrary result. We do not so construe the cited cases.

In the *Pressner* case, *supra*, it was held, consistent with our conclusion here, that a use provision ordinarily prevails over an *eo*

*nomine* designation, unless a clear congressional intent to the contrary is evidenced. The court found that the phrase, not specially provided for, in the provision of paragraph 339 of the present law for household utensils, when considered in the light of repeated provisions for needlecases and needlebooks in successive tariff acts as far back as 1909, was indicative of such intent. Accordingly, the provision for household utensils, not specially provided for, was held to apply to those only which were not otherwise specifically enumerated.

The *Lansen-Naeve Corp.* case, *supra*, was concerned with the relative specificity of the provision in paragraph 344 of the Tariff Act of 1930, as modified, for cylindrical steel rolls, ground and polished, and the provision in paragraph 372 of said act, as modified, for parts, not specially provided for, of machine tools. In holding that the *eo nomine* designation for cylindrical steel rolls applied to the subject merchandise, the court stated:

> This rule, however, cannot be applied to the instant situation. The narrow issue confronting this court is not whether a use provision should prevail over a descriptive provision, but whether a use provision *qualified by a not specially provided for clause* should prevail over a competing descriptive designation.

> It has been repeatedly held by this court that, subject to clearly shown contrary legislative intent, a "not specially provided for" clause in a use provision excludes therefrom articles enumerated elsewhere by descriptive or *eo nomine* designation * * *. This principle is subject only to the qualification that the competing provision must be more than an unlimited general description of the merchandise. It must aptly and specifically name or describe the goods in question. *Drakenfeld & Co.* v. *United States*, 2 Ct. Cust. Appls. 512, T.D. 32248; *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T.D. 37979; *United States* v. *Snow's United States Sample Express Co.*, 6 Ct. Cust. Appls. 120, T.D. 35388. That is to say, the goods must actually be *specially* provided for. [Italics quoted.]

Our views with respect to the scope of the *Lansen-Naeve* decision were expressed in the case of *Vandegrift Forwarding Co., Inc.* v. *United States*, 39 Cust. Ct. 114, C.D. 1915, wherein we said:

> Reference might also well be made to the case of *United States* v. *Herman H. Sticht & Co.*, 22 C.C.P.A. (Customs) 40, T.D. 47048, holding the provisions of paragraph 353 of the present law for parts, not specially provided for, of electrical telegraph and radio instruments to be more specific than the provision for devices for indicating the speed of arbors, etc. It was there stated:

>> It is true, as pointed out by the Government, that paragraph 353 contains the clause "not specially provided for", while paragraph 368 does not. However, it is well settled by this court that if an article is more specifically described in a paragraph containing the "not specially provided for" clause than in a paragraph not containing such clause, the presence of the clause in the one paragraph will not have the effect of excluding the article from the paragraph where it is more specifically provided for. *Knauth, Nachod & Kuhne* v. *United States*, 4 Ct. Cust. Appls. 58, T.D. 33307; *Loewenthal & Co.* v. *United States*, 6 Ct. Cust. Appls. 209, T.D. 35464; *Comstock & Theakston* v. *United States*, 12 Ct. Cust. Appls. 502, T.D. 40698.

The recent case of *United States* v. *Lansen-Naeve Corp., supra,* relied upon by defendant herein, does not disturb this principle. That case stands for the proposition that where a use provision is qualified by the phrase "not specially provided for" it is subordinate to a descriptive or *eo nomine* provision, but only where the latter "aptly and specifically name[s] or describe[s] the goods in question. * * * That is to say, the goods must actually be *specially* provided for." [Italics quoted.] Where, however, a descriptive provision merely includes an article within its general terms, a designation by use, even though limited to articles, not specially provided for, would be controlling.

While the language in paragraph 909, *supra,* providing for all articles, made or cut from pile fabrics, is broadly inclusive, and would, in the absence of any provision for wearing apparel, serve to embrace wearing apparel, made or cut from pile fabrics, it can not be said that those particular articles are therein mentioned by name. They are merely covered by the general descriptive terms of the paragraph, but are not otherwise enumerated. Thus, they fall within the exception to the rule formulated in the *Lansen-Naeve* case, *supra,* as being more specifically provided for as wearing apparel of every description, despite the words of limitation which qualify the provision.

Cotton wearing apparel of every description, not specially provided for, is a designation which may be found, without variations material to this inquiry, in every tariff law since the act of 1890.[1] The underlying purpose of the modifying phrase seems clearly to be shown in the following excerpt from the 1929 Summary of Tariff Information, on the act of 1922, which, of course, was before the Congress when the present act was passed. It was there stated:

Paragraph 919 covers clothing and articles of wearing apparel of every description, in chief value of cotton, not specially provided for. Articles specially provided for elsewhere are garters, suspenders, braces, and other manufactures of narrow wares (par. 913); knit goods (pars. 915, 916, 917); handkerchiefs (par. 918); and apparel ornamented with embroidery, lace, etc. (par. 1430).

It is thus apparent that Congress employed the phrase "not specially provided for" in paragraph 919 so as to avoid a conflict with other enumerations of wearing apparel to which special consideration had been given. The language of paragraph 909 is not such other enumeration, as no item of wearing apparel is therein specifically mentioned. Under these circumstances, we can not spell out a congressional purpose to exclude from the group of articles which have been provided for in terms of use, those which, though fitted for the use, otherwise meet a general description couched in terms of composition.

At the conclusion of the trial, counsel for the party in interest moved to dismiss the protest upon the grounds that plaintiff had failed to prove a *prima facie* case, and that the matter to be decided herein is

---

[1] Par. 349 of the Tariff Act of 1890; par. 258 of the act of 1894; par. 314 of the act of 1897; par. 324 of the act of 1909; par. 256 of the act of 1913; and par. 919 of the act of 1922.

concluded by prior adjudications. In view of the fact that the issue in this case is primarily one of law, which involved a consideration and potential application of the rule of law recently pronounced in the *Lansen-Naeve*, case, *supra*, the motion to dismiss is denied. On the merits, however, we are compelled to hold that the collector properly invoked the provisions of paragraph 919, as modified, *supra*, for the classification of the corduroy overalls, crawlers, and slacks involved in the instant importation, and the assessment of duty at the rate of 20 per centum ad valorem. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.