UNITED STATES *v.* AMERICAN EXPRÈSS CO. (No. 1821).[1]

1. CONSTRUCTION, PARAGRAPH 333, TARIFF ACT OF 1913—EXPRESSED EXCEPTION EXCLUDES OTHERS—ARTICLES MADE OF BEADS.

Under the rule of expressio unius est exclusio alterius, it would seem that the expressed exception of articles not embroidered nor appliquéd from the provision of paragraph 333, tariff act of 1913, for articles made of beads would leave *all* other articles made of beads dutiable under the paragraph.

2. CONSTRUCTION, PARAGRAPH 333, TARIFF ACT OF 1913—EJUSDEM GENERIS—"CURTAINS AND OTHER ARTICLES."

The language "Curtains and other articles" in paragraph 333, tariff act of 1913, taxing articles made of beads, does not mean that the "other articles" must be .ejusdem generis with "curtains."

3. ROSARIES.

Rosaries composed in chief value of beads are dutiable as articles made of beads, under paragraph 333, tariff act of 1913.

## United States Court of Customs Appeals, May 28, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40585.
[Reversed.]

*Bert Hanson*, Assistant Attorney. General. (*Thomas J. Doherty*, special attorney, of counsel), for the United States.
*Joseph F. Lockett* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The single question in this case is whether rosaries composed in chief value of beads are classifiable under paragraph 333 of the tariff act of 1913. The paragraph reads as follows:

Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, fifty per centum ad valorem.

It will be noted that this paragraph provides for beads and spangles *of all kinds.* It also provides for "curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material." These provisions could not well be more broad and comprehensive than they are unless under the rule of ejusdem generis there is found to be a qualification of the terms employed.

These rosaries are made of beads in chief value. If the language "other articles * * * composed wholly or in chief value of beads" be accorded its most natural meaning, there can be no doubt that this article is precisely described. But it is suggested that by reason of the presence of the word "curtains" in the paragraph, the general

words are to be limited to articles ejusdem generis with curtains, and the case of Benziger v. United States (172 Fed., 280) is cited in support of this contention.

That case considered paragraph 408 of the tariff act of 1897, which we quote:

> 408. Beads of all kinds, not threaded or strung, thirty-five per centum ad valorem; *fabrics, nets or nettings,* laces, embroideries, galloons, wearing apparel, ornaments, trimmings, and other articles not specially provided for in this act, composed wholly or in part of beads or spangles made of glass or paste, gelatin. metal, or other material, *but not composed in part of wool,* sixty per centum ad valorem.

Under the rule of ejusdem generis, it was held in the Benziger case that the general language "composed wholly or in part of beads" was restricted to articles of like kind or character as those enumerated.

There is no occasion to criticize this holding in any way. The statute considered by the court in that case contained on the one hand a specific enumeration of fabrics of certain described kinds, with a negative qualification, "not composed in part of wool," and the articles in question were obviously of a very different kind or character from curtains. All the articles there enumerated were articles upon which beads might be superimposed, and no article of which beads were the predominant feature was mentioned.

The present act presents a very different case. Here we have all articles which are necessarily in the nature of *fabrics* dropped from the paragraph, the only specific article mentioned being "curtains"— *which did not appear in the act of 1897*—followed by general words which in turn are followed by restrictions which themselves furnish the only limitation placed upon them. The word "curtains" was introduced in the act of 1909, but in the act of 1913 it is the only word used to designate a particular article. This change in the statute must have had some purpose. At least it can be said that we can not go back of this enactment to base a construction upon language employed in a prior act which had been expressly omitted in the one under consideration.

Bead curtains are not necessarily fabrics. On the contrary, many bead curtains, if not most of them, are simply beads strung in different lengths suspended in windows or doorways. It indicates, therefore, no such restricted use of the words "other articles * * * in chief value of beads," as was imputed to the language of the act of 1897.

. But a most persuasive reason for the view that the language should be given its natural import is found in the fact that the Congress placed its own restriction in the act itself upon the general language "other articles." It is provided that other articles composed wholly or in chief value of beads or spangles shall be dutiable

at 50 per cent, but an exception is noted in these words—"other articles not embroidered nor appliquéd and not specially provided for in this section." The rule of ejusdem generis runs counter to. the rule of expressio unius est exclusio alterius, so that when Congress has seen fit in speaking of the articles which it designs to except from other articles composed wholly or in chief value of beads to restrict its exception to such as are not embroidered nor appliquéd, and not specially provided for in the section, it leaves the general words to bear their ordinary and natural meaning.

An authority directly in point upon this question is found in Endlich on Interpretation of Statutes (sec. 408, p. 575). Citing and construing the case of R. *v.* Shrewsbury (3 B. & Ad., 216) it is said:

So, where an act imposed a rate on a variety of tenements and buildings which were enumerated, and on "other buildings and hereditaments, *meadow and pasture excepted*," the exception appended to the concluding general words showed that the latter were used in their widest sense, and were not limited in meaning by the particular terms which preceded them.

This authority is directly in point and, by a substitution of terms defining the subject matter, would state the present case and rule it.

It is suggested that the common meaning of the word "bead," whether verb or noun, implies a use which is decorative or ornamental, and that consequently only such articles as are ornamented or decorated with beads or ornaments or ornamental articles of beads are within the scope of the provision.

I do not see how this contention can be harmonized with the case of Benziger *v.* Robertson (122 U. S., 211), in which case the rosaries, composed in part of beads, were held dutiable as beads under the provisions of the Revised Statutes, 2499, which enacted that "on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable." In the case cited the beads were put to use in the manufacture of rosaries, which are not ornamental, and yet they retained their character as beads sufficiently to fix the tariff status of the merchandise of which they became a part.

But more than this, the origin and meaning of the word "bead" when applied to a perforated ball, is given in the Oxford Dictionary as follows:

2. A small perforated ball or other body, a series of which (formerly called "a pair of beads") threaded upon a string, forms the rosary or pater noster, used for keeping count of the number of prayers said.

And in giving *extensions* to this definition, a definition is given as follows:

4. A small perforated body, spherical or otherwise, of glass, amber, metal, wood, etc., used as an ornament, either strung in a series to form a necklace, bracelet, etc., or sewn upon various fabrics.

How "beads  *  *  *  of all kinds" and "other articles  *  *  * in chief value of beads" can in the presence of these definitions and this origin of the word be held to exclude an article composed of beads used for a purpose which gave the bead its original name, I fail to perceive, unless such a holding can be rested, as is claimed, upon the doctrine of ejusdem generis, which, in my view, is not applicable under the statute as it now reads: ·

We think the rosaries in question fall well within the terms of paragraph 333 and that the decision of the Board of General Appraisers, which sustained the protest against the assessment, should be *reversed*.

DISSENTING OPINION.

SMITH, Judge: I regret very much that I am unable to concur in the majority opinion. The rosaries involved in the appeal are composed of metal chain, metal crosses, other metal parts, and beads made of various materials. The beads of the rosaries marked on the invoice as item 7 and represented by sample exhibit 1, are wholly of metal, and, considered as separate entities, constitute the component material of chief value. The beads of the rosaries marked item 23 on the invoice and represented by sample exhibit 2, are made of porcelain and, considered as separate entities, are of greater value than the metal components. The beads of the rosaries marked on the invoice as items 15, 17, 6, 2, and 19, and respectively represented by sample exhibits 3, 4, 5, 6, and 7, are made of cocoanut shell, and, considered as separate entities, exceed in value the metal constituents. The board held that the rosaries composed entirely of metal were articles of metal dutiable at 20 per cent ad valorem under paragraph 167, and that the rosaries composed in part of cocoanut shell beads were nonenumerated manufactured articles dutiable at 15 per cent ad valorem under paragraph 385. The protest of the importers was accordingly sustained as to items 7 (exhibit 1), 15 (exhibit 3), 17 (exhibit 4), 6 (exhibit 5), 2 (exhibit 6), and 19 (exhibit 7). The board found that item 23 (exhibit 2) was composed in chief value of porcelain colored, and that the merchandise covered by that item was therefore properly dutiable at 55 per cent ad valorem under paragraph 80. Inasmuch, however, as the importer made no claim that any of the rosaries were dutiable under paragraph 80, the board, while refusing to approve, declined to disturb the collector's decision.

From the decision of the board the Government appealed, and now contends in effect that paragraph 333 covers articles of every kind which are made in chief value of beads and that therefore all of the rosaries the subject of protest are dutiable under that paragraph. I do not think that the contention of the Government can be successfully maintained, in the face of the judicial interpretation

long since put upon similar provisions of the tariff law and accepted by the Government.

Paragraph 408 of the tariff act of 1897 provided for—

Beads of all kinds,. not threaded or strung, thirty-five per centum ad valorem; fabrics, nets or nettings, laces, embroideries, galloons, wearing apparel, ornaments, trimmings, and other articles not specially provided for in this act, composed wholly or in part of beads or spangles made of glass or paste, gelatin, metal, or other material, but not composed in part of wool, sixty per centum ad valorem.

Under that provision, which provided for articles composed wholly *or in part* of beads, the Board of General Appraisers, General Appraiser Sharretts dissenting, held that the rosaries were dutiable as articles of beads. (T. D. 28883.) In the dissenting opinion it was pointed out that for more than 50 years the beaded articles provided for in tariff acts had been associated with ornamented or ornamental articles, and it was argued with much force that as that same association was preserved in paragraph 408, rosaries intended for devotional purposes were not ejusdem generis with the articles therein provided for, inasmuch as they were neither ornaments nor ornamental in character. The decision of the board was reversed on appeal to the United States Circuit Court for the Southern District of New York, and the dissenting opinion was expressly approved. (172 Fed., 280.) The decision of the circuit court was affirmed without opinion by the Circuit Court of Appeals for the Second Circuit (178 Fed., 1006), and the Government acquiesced (T. D. 30457).

Paragraph 421 of the tariff act of 1909 to some extent modified and changed paragraph 408 of the tariff act of 1897, but beaded articles were still associated with articles which were either ornamented or ornamental. With the exception of curtains, none of the articles wholly or in part of beads or wholly or in chief value of beads mentioned in paragraphs 408 of the tariff act of 1897 and 421 of the tariff act of 1909 are provided for *by name* in paragraph 333 of the tariff act of 1913. Notwithstanding the fact, however, that such articles are no longer provided for eo nomine in paragraph 333, they are still subject to its provisions (Loewenthal *v.* United States, 6 Ct. Cust. Appls., 209; T. D. 35464), and I think the paragraph must be regarded as dealing with and confined to articles which are either ornaments or articles ornamented with beads.

The term "bead," as commonly and popularly understood, implies an article which is used for the purposes of ornamentation or decoration.

New Standard Dictionary:

Bead.—*n.* A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration. 2. Plural. A rosary for keeping count of prayers. Bead.—*v.* To decorate with or as with beading or beads.

Webster's New International Dictionary:

*Bead.—n.* A little perforated ball to be strung on a thread and used: (1) In the rosary for counting prayers. * * * (2) for ornament. *Bead.—v.* To ornament or provide with beads or beading.

New Oxford Dictionary:

*Bead.—n.* * * * 4. A small perforated body, spherical or otherwise of glass, amber, metal, wood, etc., used as an ornament, either strung in a series to form a necklace, bracelet, etc., or sewn upon various fabrics. *Bead.—v. trans.* To furnish, adorn, or work with beads.

New International Encyclopedia: .

*Bead.*—A variety of personal ornament, made of various materials, as glass, pottery, metal, bone, ivory, wood, jet, amber, coral, etc., and perforated so that it can be strung on threads, and made into necklaces, bracelets, rosaries, etc., or work on cloth as a kind of embroidery. * * *

*Bead.*—A word which in Anglo-Saxon and Old English signified a prayer, and hence came to mean the small perforated balls of gold, silver, glass, ivory, hardwood, etc., used for keeping account of the number of prayers repeated. A certain number strung on a thread makes a rosary.

Encyclopædia Britannica:

*Bead.*—A small globular ball used in necklaces, and made of different materials, as metal, coral, diamond, amber, ivory, stone, pottery, glass, rock-crystal, and seeds. * * *. Beads of the more expensive materials are strung in necklaces and worn as articles of personal adornment, while the cheaper kinds are employed for the decoration of women's dress.

Considering the fact that spangles are chiefly if not solely used for ornamental purposes, that curtains, wholly or in chief value of beads, provided for in the paragraph, implies an ornamental article of beads or an article ornamented with beads, and taking into account the history of the legislation on the subject, as well as the meaning commonly and popularly attached to the term "bead," whether a noun or a verb, I am of opinion that beads and beaded articles are just as much associated with the idea of ornaments, ornamentation, and decoration in paragraph 333 of the tariff act of 1913 as they were under the previous acts, beginning with that of 1890, especially as paragraph 333 has been held to include all of the articles made of or ornamented with beads which were enumerated in paragraph 408 of the tariff act of 1897 and paragraph 421 of the tariff act of 1909, with the exception of articles embroidered or appliquéd. American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36259); Loewenthal *v.* United States (6 Ct. Cust. Appls., 209; T. D. 35464). It is true that in Loewenthal *v.* United States, supra, in discussing the relation of paragraphs 358 and 333 of the tariff act of 1913, we made use of the following language:

The fact that paragraph 358, act of 1913, is the substitute for paragraphs 349 and 402 of the act of 1909 and drops therefrom the provision for "goods ornamented with beads or spangles," in said paragraph 402, thereby failing, not to say refusing, to

carry it into the revised paragraph (358) and expressly confining the provisions relating to that subject matter to paragraph 333, does not leave the congressional purpose clothed with much doubt. Bearing in mind, therefore, the amended act and reading together all the amended provisions, we think the congressional purpose clear to provide by paragraph 333 for all articles in chief value of beads, and by paragraph 358 for the therein enumerated articles in chief value of threads, yarns, and filaments.

As we were there considering beaded tunics, motifs, garnitures, and gimps of beads, and running lengths or strips of beaded designs, I feel that it can hardly be said that we were then contemplating any other class of articles than those which were either ornaments of beads or articles ornamented with beads, and to that class of articles the language used should be confined. Otherwise, the language would have the effect of classifying articles which were not before the court and not the subject of controversy. I do not dispute the doctrine that where a designation or term covers completely a class of things— that is to say, where the term exhausts the genus—there is nothing left ejusdem generis, and that consequently a general specification of other articles must relate to something other than that covered by the class or genus designation. I simply deny that that doctrine has any application to paragraph 333. As I construe that provision, the term "curtains" as there used is not a generic designation, but a designation of such curtains only as are ornamental articles of beads or articles ornamented or decorated with beads, and the phrase "and other articles" does not mean other articles like curtains, but other articles which, like curtains, are either ornamented with beads or ornamental because made of beads. The fact that paragraph 333 excepts from its operation embroidered and appliquéd articles emphasizes, I think, the intention to include within the paragraph ornamented or ornamental articles, and if the paragraph is regarded as applicable only to ornamental or ornamented articles, the exception of two classes of ornamental articles would not imply a legislative intent to include all articles whether ornamented, ornamental, or not.

As the rosaries under consideration are not designed to be used as ornaments and are not ornamented with beads, they are not ejusdem generis with the goods provided for in paragraph 333 and are not subject to duty as therein prescribed. In my opinion, therefore, the decision of the Board of General Appraisers should be affirmed.