VANDEGRIFT & CO. *v.* UNITED STATES (No. 2841)[1]

---

[1] T. D. 42221.

United States Court of Customs Appeals, May 19, 1927

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument March 18, 1927, by Mr. Tompkins and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise known as "fish-spine beads," and consisting of cylinders, perforated concentrically, with one base convexed and the other concaved so that the convexity of one cylinder fits into the concavity of another, used to insulate electrical wires, and composed in chief value of talc or steatite, vitrified, was assessed for duty by the collector at 60 per centum ad valorem as articles of vitrified or semi-vitrified ware under paragraph 212 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 212. China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, and all bisque and parian wares, including clock cases with or without movements, plaques, pill tiles, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware, plain white or plain brown, not painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware not specially provided for, 60 per centum ad valorem;  *  *  *

The articles are claimed to be dutiable, alternatively, as "beads" under paragraph 1403 at 35 per centum ad valorem, or as manufactures of talc or steatite at 35 per centum ad valorem under paragraph 209.

Paragraphs 1403 and 209, respectively, read as follows:

PAR. 1403. Spangles and beads, including bugles, but not including beads of ivory or imitation pearl beads and beads in imitation of precious or semiprecious stones, 35 per centum ad valorem; beads of ivory, 45 per centum ad valorem; fabrics and articles not ornamented with beads, spangles, or bugles, nor embroi-

dered, tamboured, appliquéd, or scalloped, composed wholly or in chief value of beads or spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones, 60 per centum ad valorem; imitation pearl beads of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 60 per centum ad valorem; all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 45 per centum ad valorem: *Provided*, That no article composed wholly or in chief value of any of the foregoing beads or spangles shall pay duty at a less rate than is imposed in any paragraph of this act upon such articles without such beads or spangles.

PAR. 209. Talc, steatite or soapstone, and French chalk, crude and unground, one-fourth of 1 cent per pound; ground, washed, powdered, or pulverized (except toilet preparations), 25 per centum ad valorem; cut or sawed, or in blanks, crayons, cubes, disks, or other forms, 1 cent per pound; manufactures (except toilet preparations), of which talc, steatite or soapstone, or French chalk is the component material of chief value, wholly or partly finished, and not specially provided for, if not decorated, 35 per centum ad valorem; if decorated, 45 per centum ad valorem.

The record contains the following stipulation:

It is hereby stipulated by and between the attorneys for the importers and the Assistant Attorney General for the United States that the merchandise covered by the above-named protests, represented by the samples herewith submitted marked "Exhibit I," consists of goods invoiced as fish spine beads, designed and used for insulating purposes, and composed in chief value of talc or steatite. It is further stipulated that the beads in question are articles or manufactures composed wholly or in chief value of vitrified or semivitrified ware.

Said protests are submitted for decision upon this stipulation, including all of the papers in the case.

The court below held that as "there is nothing about the beads imported in the cases at bar which indicates that they were designed to be used in any way for decorative purposes or to be made pleasing to the eye, but rather designed only for use in insulating wire, * * * they are not provided for in paragraph 1403 as "beads." The court also held that the provision for articles composed wholly or in chief value of "vitrified ware" contained in paragraph 212 more aptly described the merchandise than the provision for "manufactures (except toilet preparations), of which talc, steatite * * * is the component material of chief value, wholly or partly finished, and not specially provided for, if not decorated."

The protests were accordingly overruled.

It is claimed by appellant: That the merchandise is dutiable as "beads" under paragraph 1403; that the term "beads" covers all beads, including those used for utilitarian purposes; but that, if the merchandise is not dutiable as "beads," it is more specifically provided for in paragraph 209 as manufactures of talc or steatite, than in paragraph 212 as articles composed of vitrified or semivitrified ware.

The Government contends that the provision for "beads" in paragraph 1403 was intended to cover only such articles as were designed for purposes of ornamentation and decoration; and that, as the involved articles were not so designed and are not ornamental in character, they are not dutiable under paragraph 1403.

It is urged that, as these articles are finished manufactures of talc or steatite, vitrified, they are more specifically provided for as articles of vitrified ware than as manufactures of talc or steatite.

The first provision of paragraph 1403 covers "Spangles and beads, including bugles" at 35 per centum ad valorem. Beads of ivory, imitation pearl beads, and beads in imitation of precious or semiprecious stones are excluded therefrom. Beads of ivory are named in the second provision at a higher rate of duty. The third provision covers "fabrics and articles *not ornamented with beads*, spangles, or bugles, * * * composed wholly or in chief value of beads or spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones." (Italics not quoted.) The fourth provision covers "all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted."

It will be observed that all of the articles named in the paragraph preceding the *proviso* clause are ornamental in character and are undoubtedly chiefly used for ornamental or decorative purposes. Moreover, the Congress has plainly indicated, by the language "fabrics and articles *not ornamented with beads*" in the third provision of the paragraph, that it was intending to provide for beads ornamental and decorative in character. (Italics not quoted.)

Paragraph 1430 contains a provision for fabrics and articles "ornamented with beads, bugles, or spangles." So again we find the Congress associating beads with bugles and spangles and characterizing them as ornamental articles.

A bugle is "a tube-shaped glass bead, commonly black, used for ornamenting garments." (Funk & Wagnalls New Standard Dictionary.)

A spangle is a "small bit (usually circular) of brilliant tin- or metal-foil, with holes for the seamstress's needle; used for decoration in dress, now especially in theatrical costumes." (Funk & Wagnalls New Standard Dictionary.)

A bead is "a little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration." (Funk & Wagnalls New Standard Dictionary.)

We are of opinion, considering the context of paragraph 1403, the provision relating to beads, bugles, and spangles contained in paragraph 1430, and the quoted dictionary definitions, that the Congress intended to restrict the provisions for "beads" to such as

were ornamental or suitable for decorative purposes. It does not follow, however, that such beads are confined to purely ornamental or decorative uses. They, although ornamental in character, may, nevertheless, be used for utilitarian as well as decorative purposes. Articles, either utilitarian or ornamental in character, or possessing both characteristics, may be composed of such beads. In the case of *United States* v. *American Express Co.*, 8 Ct. Cust. Appls. 157, T. D. 37286, this court held that rosaries, composed in chief value of beads, were dutiable under the provisions of paragraph 333 of the tariff act of 1913 for articles composed in chief value of beads. It was there claimed that, as rosaries were not used for ornamental or decorative purposes, they were not included in the provision for articles composed in chief value of beads.

In the case of *American Bead Co.* v. *United States*, 5 Ct. Cust. Appls. 459, T. D. 35001, it was held that "small rounded disks of commercial agate, white in color, and pierced with a single hole through the center," ornamental in character and chiefly used as "button blanks," were equally specifically provided for as "beads" under paragraph 421, and as "agate-button blanks" under paragraph 427 of the tariff act of 1909. They were, therefore, held to be dutiable under paragraph 421—the rate of duty provided therein being higher than that provided in paragraph 427.

In the case of *Marshall Field & Co.* v. *United States*, Abstract 49244, the court held that beads of various colors, used for making table mats, portières, etc., were dutiable as "beads" under paragraph 1403.

In the case of *Steglich & Baese* v. *United States*, T. D. 11047, G. A. 490, the court held that perforated oval-shaped pieces of agate with beveled edges, used as eyelets on fishing poles for the line to pass through, were dutiable as "beads." The articles were obviously ornamental in character. They were, however, used for a utilitarian purpose.

In the case of *A. W. Fenton Co.* v. *United States*, Abstract 1663, decided by the United States Customs Court, January 10, 1927, it was held that "merchandise known as insulating beads used on cable terminals of lamps" and consisting of "small cylindrical articles composed of some hard black material, pierced, resembling a short section of pipe, * * * very plain and not ornamental, and * * * also known as lava beads," were dutiable as beads under paragraph 1403.

We have examined many other decisions upon the subject and, with the exception of the *Fenton & Co.* case, *supra*, only ornamental or decorative beads or articles made of such beads have been held to be dutiable under provisions for "beads" or "articles" composed thereof.

The involved articles are not ornamental in character. They were designed for utilitarian uses only. They are not therefore classifiable under paragraph 1403.

We come now to consider the question of the relative specificity of the competing provisions of paragraphs 209 and 212, it having been stipulated that the merchandise is covered by the provisions of both paragraphs.

Paragraph 209 provides for "manufactures  *  *  *, of which talc, steatite or soapstone, or French chalk is the component material of chief value, wholly or partly finished, and not specially provided for."

Paragraph 212 provides for "china, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, *  *  * and all other articles composed wholly or in chief value of such ware, plain white, or plain brown, not painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware not specially provided for."

The word "vitrify" means "To fuse into glass or glasslike appearance wholly or only on the surface; cause to be vitreous or covered with a glaze." Funk & Wagnalls New Standard Dictionary.

"Vitrified" means "converted wholly or externally into glass or a glassy substance, as a siliceous compound by fusion; also, covered with a glaze; as, *vitrified* brick; *vitrified* pottery." Funk & Wagnalls New Standard Dictionary.

It has been stipulated by the parties that the merchandise in question consists of manufactures of talc or steatite, and is also articles of vitrified ware.

As we interpret this stipulation, it means that the articles are made of talc or steatite, vitrified.

We think that the merchandise is more specifically provided for in paragraph 212. The provision for "articles" therein is more specific than the provision for "manufactures" in paragraph 209. *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T. D. 41575. Furthermore, the provision for articles of vitrified ware includes only such articles as are made of substances specially treated or processed, and thereby converted wholly or externally into glass or a glassy substance. The provision for manufactures of talc or steatite is not so limited, but includes all manufactures of such substances whether vitrified or not.

The articles in question are composed of talc or steatite specially processed by vitrification. They are, therefore, more specifically provided for as articles of vitrified ware.

For the reasons stated, the judgment is *affirmed*.

DISSENTING OPINION

BARBER, Judge: I can not see my way clear to concur in the views of my associates in this case. Beads have been provided for *eo nomine* in practically every tariff act, including and since the act of 1832. In none of these has Congress limited or restricted such *eo nomine* provisions to beads that were ornamental or suitable for -decorative purposes. No such restrictive language is found in paragraph 1403 and in my opinion it is wiser to leave such a limitation to the legislative body, especially as no judicial tribunal or executive department, so far as has been ascertained, has heretofore come to that conclusion.

In the case of *United States* v. *American Express Co.*, 8 Ct. Cust. Appls. 157, the suggestion was rejected that the common meaning of the word "bead," whether verb or noun, implied a use which was decorative or ornamental. This was done upon the authority of *Benziger* v. *Robertson*, 122 U. S. 211, in which case rosaries composed in chief value of beads of various materials, such as glass, wood, steel, bone, ivory, etc., the rosaries never being used for ornament, were held dutiable at the rate provided for all beads instead of as manufactures of the various materials of which the beads were composed.

I do not think the provision in paragraph 1403 for—

* * * fabrics and articles not ornamented with beads * * * composed wholly or in chief value of beads * * *—

justifies the interpretation given it in the main opinion. It seems to me to indicate that Congress understood that such fabrics or articles might be composed wholly or in chief value of beads that were neither ornamental in themselves nor suitable for decorative purposes. If so, of course, the main opinion is wrong. I do not think we can judicially know that all beads in the common understanding are ornamental or suitable for decorative purposes, and the word "bead" must be given its common meaning in this case. Such meaning will always depend, in some measure, upon the mandates of fashion, and beads that to-day may be considered ornamental or decorative may sooner or later come to be otherwise regarded.

The merchandise here answers precisely to the common meaning of the word "bead," as defined by lexicographers, in that each is "a little perforated sphere, ball, cylinder, or the like." The fact that the definition cited in the main opinion adds the words "usually strung on a thread or attached to a fabric for decoration" implies that beads are not always so strung or attached or so used.

The construction given to paragraph 1403 by the majority would exclude the possibility of classifying merchandise thereunder by proof of commercial designation.

There is another reason why I doubt the soundness of the conclusion that these fish-spine beads are classifiable under paragraph 212. The stipulation goes no further than to establish that the beads in question are "articles or manufactures composed wholly or in chief value of vitrified or semivitrified ware." Such a stipulation does not, in my opinion, bring the merchandise within the provisions of the paragraph, which makes an essential prerequisite to classification thereunder that the vitrified wares and the articles composed wholly or in chief value thereof and the manufactures in chief value of such ware shall be "composed of a vitrified, nonabsorbent body which when broken shows a vitrified or vitreous or semivitrified or semivitreous fracture," which fact is not shown to exist in this case.

I would sustain the claim for classification under paragraph 1403.