LEONARD LEVIN CO. *v.* UNITED STATES (NO. 4218)[1]

United States Court of Customs and Patent Appeals, October 30, 1939

*Eugene F. Blauvelt* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.

[Oral argument October 5, 1939, by Mr. Blauvelt and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court, First Division, in suits brought by protests to recover certain duties assessed and collected at the port of New York upon merchandise consisting of glass beads which, as imported, were strung in necklace lengths, the beads, as shown by Collective Illustrative Exhibit 1, being of different sizes. The beads are solid except for the small openings through which the string is run and are not colored, but the glass being translucent in nature they have a whitish appearance.

The collector's classification was under that portion of paragraph 1503 of the Tariff Act of 1930 which reads:

\* . \* \* all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, 45 per centum ad valorem: \* \* \*

---

[1] C. A. D. 69.

Importer's claim is for classification under that portion of the same paragraph which reads:

\* \* \* beads, \* \* \* not specially provided for, 35 per centum ad valorem; \* \* \*.

In the decision of the trial court other kinds of beads were involved and the judgment covers both classes. As taken, the appeal seems to have covered both, although the application for rehearing before the trial court was limited "to the so-called alabaster beads represented by Collective Exhibit 1." At the hearing before us, however, counsel for appellant conceded, as stated in his brief,

"\* \* \* that the decision of the court below was correct in so far as the merchandise represented by Exhibit 2 is concerned \* \* \*."

So, we have only to consider the beads above described.

There were a number of entries and several different protests were filed, but all the cases were consolidated for trial.

We find no statement in the report of the collector as to what particular precious or semiprecious stone or stones the involved beads are "in imitation of." It is the contention of the Government, as stated in its brief, first, that they are in imitation of "white agate, chalcedony, white onyx, or white jade, in color, general appearance, brilliancy, translucency, and luster"; and, second, that "white agate, chalcedony, white onyx, or white jade, are precious or semiprecious stones." The second contention does not seem to be questioned, but importer quite vigorously questions the first, and asserts, in substance, that none of the witnesses called by the Government had any familiarity with beads like those contained in Collective Exhibit 1.

The brief on behalf of appellant states (omitting the references to record pages as indicated by stars):

The beads in question are never used as beads in the condition as imported. Their only use is as cores or bases for beads in imitation of pearl or sometimes in imitation of precious stones. The importer testified that he sold these beads exclusively to manufacturers of imitation pearl beads and that he had never seen beads of this kind worn or offered for sale ready to be worn \* \* \*. Max C. Meyer, 35 years in the business of manufacturing imitation pearl beads, testified to the same effect \* \* \*. He explained that beads like those in Collective Exhibit 1 were coated from three to nine times with a pyroxylin solution, containing pigment or color or the crystals of fish scale; that after the coating was applied the beads were made up into necklaces like Illustrative Exhibit B \* \* \*. This testimony was not rebutted nor denied by any of the Government witnesses. Indeed, none of them had ever dealt in the imported beads nor were they shown to have had any familiarity with them.

It would seem from the foregoing that appellant's view is that the articles involved are merely material for use in the making in this country of beads in imitation of pearl beads, or precious or semiprecious stones, but no claim is presented before us other than the claim under paragraph 1503 of the Tariff Act of 1930, *supra*, which is what may be

designated a "bead" paragraph, appearing in "SCHEDULE 15—SUNDRIES" of title 1 (the dutiable list) of the act.

So far as this case is concerned, upon the presentation here made, we must regard the involved articles as beads which fall somewhere within paragraph 1503, *supra*, and, as we view it, the only question is whether they are imitations of precious or semiprecious stones. Indeed, for the purposes of this case, the issue might be further narrowed by disregarding the word "precious" and confining our inquiry to whether they are in imitation of "semiprecious" stones, since there is no evidence anywhere that they are in imitation of any "precious" stone, as the term "precious" is commonly understood in this connection, nor is there any suggestion of their being in imitation of pearl beads.

It is the contention of appellant that the beads do not imitate any precious or semiprecious stones. It is claimed, in effect, that the testimony of the Government's witnesses does not go further than to show a resemblance in color only and we are cited to the case of *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024, where this court, concurring with the trial tribunal, held that *color alone* did not constitute a sufficient resemblance to justify the classification of the beads there involved under a provision of the Tariff Act of 1922 quite similar to the provision under which the here-involved beads were classified by the collector, but that they were properly classifiable under a provision similar to that under which appellant here makes claim.

It is proper to say that most of the beads involved in that case were shown to be used for the ornamentation of ladies' handbags, dresses, and millinery, and that they were not sold to the jewelry trade nor, so far as known, used for jewelry purposes. Some of them were made of wood and others were made of "ordinary light, colored glass." There was testimony to the effect that to make imitation precious or semiprecious stones a composite glass much harder than ordinary glass and containing lead must be used. In the course of our decision we said:

The testimony establishes to a certainty that the beads covered by importer's protest resembled precious or semiprecious stones in color only. To hold that a mere resemblance in color converted beads of wood and of ordinary glass into imitation precious or semiprecious stones would result in subjecting to radically different rates of duty beads which differed in color but in no other essential particular. It is extremely doubtful whether Congress intended to perpetrate any such anomaly as that and the doubt must be resolved in favor of the importer.

According to the testimony of experts and dealers in imitation precious and semiprecious stones, the material used for making imitation precious or semiprecious stones is a composite glass containing lead which may be cut and faceted, thereby producing imitation precious or semiprecious stones. It further appeared that from such composite glass when backed with proper material imitations may be made even of diamonds. Color by itself is not sufficient to constitute an

imitation of a precious or semiprecious stone and we must hold that the board's finding that the beads in controversy are not imitation precious or semiprecious stones is fully supported by the evidence.

In the instant case there is no testimony respecting the nature of the glass used in the manufacture of the beads and we are unable to determine its character by a mere inspection of them. It is not shown that they were made of "ordinary light, colored glass" rather than of composite glass containing lead. So, that element which evidently was regarded as of great, if not controlling, importance in the *Judae & Co.* case, *supra*, is lacking here.

We may not overlook the presumption of correctness which attaches to the collector's classification. He is presumed to have found all the elements necessary to his classification and the burden rested upon the importer to overcome this presumption by proof sufficient at least to make a *prima facie* case.

In attempting to do this, appellant did not show the inherent nature of the glass used, but proved merely the use to which the articles were put after importation and drew from one of its witnesses a general expression of opinion that they did not resemble or imitate any precious or semiprecious stones.

Appellant called two witnesses in the case. It may be said of the testimony of the importer, Mr. Levin, that some difficulty has been experienced in differentiating that respecting the beads represented by Exhibit 2, which are not here involved, from that respecting those which are involved represented by Exhibit 1. However, it is reasonably clear that he asserted that the beads of Exhibit 1 do not resemble any imitation precious or semiprecious stones *which he had imported.* He testified that he had "in particular" imported imitations of rubies, sapphires, emeralds, topaz, and rose aquamarines. He also testified that they did not resemble alabaster nor "imitations of precious or semiprecious opal beads." However, as pointed out by the trial court, he did not "state it does not resemble white agate or chalcedony, white onyx, or white jade." Appellant's other witness, Mr. Max C. Meyer, expressed the general opinion, based upon his experience of thirty-five years as a manufacturer of beads, imitation pearls, and plastic material that the beads contained in Exhibit 1 "are not in imitation, or are they comparable to any semi or precious stone." At a later point he testified to the effect that Exhibit 1 resembled agate in shape (being globular and a sphere) "but not in quality," and that it did not have the same color as agate. He was not asked to make comparison with any other specific semiprecious stone.

The testimony on behalf of the Government is likewise lacking in any showing as to the innate character of the glass, and consists largely of opinion evidence to the effect that the beads do resemble or

imitate white agate, chalcedony, white onyx, or white jade. No samples of white agate, chalcedony, white onyx, or white jade were placed in evidence. So, we are unable to make any visual comparisons for ourselves, although the articles *per se* speak for themselves, and their innate characteristics of color, translucency, luster, and the like are determinable from an inspection of them. Any comparison necessary is presumed to have been made by the collector, and there was, of course, no burden upon the Government to show the inherent nature of the glass in view of appellant's lack of evidence on this point.

Appellant questions the competency of the Government's witnesses. All of them appear to have been importers of precious and semiprecious stones but not extensive dealers in beads of the kind involved. Appellant's witnesses had much more extensive experience with such beads than that of the witnesses for the Government, but we see no reason to question the competency of the latter to express opinions, for whatever such opinions may be worth, based upon the appearance of the beads as compared with the appearance of the stones to which they referred.

All the opinion evidence in the case is presented in such a manner and upon such a basis as to render it difficult to determine just what weight should be given it. Both the questions and answers were very general in character and limited largely to the *general appearance* of the beads as compared with some named precious or semiprecious stones, but not specifically including some other stones which the Government claims the beads do resemble.

An argument on behalf of appellant is stated in its brief as follows:

In order that a bead be an imitation of a precious or semiprecious stone, it must be a conscious or deliberate copy. The ordinary meaning of the word "imitation" connotes a deliberate and conscious act on the part of the creator before the creation itself can be deemed an imitation.

As to this it may be said that we find nothing in the statute which requires or justifies a finding as to the character of the beads based upon the intent of those who made them, and that, even if such were proper, there is no evidence of the intent of the foreign manufacturers of record.

Another case cited by appellant is that of *Vandegrift & Co.* v. *United States.* 15 Ct. Cust. Appls. 165, T. D. 42221, which arose under the Tariff Act of 1922. This seems to be cited in support of the contention that "The use to which beads are put after importation is not immaterial," and for the purpose of challenging the correctness of the trial court's holding that "It is the condition of merchandise as imported that controls its classification, not what it is made into after importation."

That the rule stated by the trial court is the correct rule generally is so well known that no authorities in support of it need be cited:

There was no departure from it in the *Vandegrift & Co.* case, *supra.* In describing the merchandise there involved, its use after importation was stated as incidental to the description of its inherent character. The same was true in the *Judae & Co.* case, *supra.*

Exceptions to the general rule may be required with respect to merchandise, the classification of which is, by the statute, made dependent upon use. Otherwise, the general rule applies. We find nothing in paragraph 1503 of the Tariff Act of 1930, *supra*, which requires or would justify the classification of the beads here involved, being made dependent upon their use after importation.

We have given consideration to appellant's citation of legislative history and the contention.based upon such history to the effect that in paragraph 1503 of the Tariff Act of 1930, *supra*, Congress evidenced an intention of giving "increased protection against the importation of imitation pearl beads" and could not have intended to increase the duty on the raw material used by manufacturers of imitation pearl beads.

It seems sufficient to say that as the issues of the case were presented before us, the legislative history recited upon that point in appellant's brief has no application. Neither imitation pearl beads nor raw material for use in their manufacture are involved upon the presentation here.

It is assigned as error that the trial court denied appellant's application for rehearing, but the assignments covering this point were not pressed before us. We find no abuse of discretion in the trial court's action.

The judgment is *affirmed.*