(C.D. 2098)

D. N. & E. WALTER & Co.  
AUSTIN WOLFE, INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 9, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *George R. Tuttle, Jr.*, of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of these protests consists of valances made in chief value of bamboo, which were assessed with duty by the collector of customs at the rate of 40 per centum ad valorem under the provision in paragraph 411 of the Tariff Act of 1930, as modified by the Presidential proclamation reported in T.D. 53865, supplemented by T.D. 53877, for "curtains * * * wholly or in chief value of bamboo." It is contended by the plaintiffs that valances are not commonly or commercially known as curtains and should take duty at 25 per centum ad valorem under the catchall provision for articles, not specially provided for, wholly or partly manufactured of bamboo, found in paragraph 409 of the said act, as modified by the said Presidential proclamations.

No question arises as to the nature and functions of the valances at bar. They are represented by plaintiffs' exhibit 1 and consist of bamboo strips, 9 inches long, laid parallel with each other, and connected by cords so as to form a fabric 9 inches wide and 52 inches long. Provision is made to attach the valance to a rod by means of loops fastened at regular intervals near one edge of the valance.

Their use is illustrated by plaintiffs' illustrative exhibit 2, a picture showing such a valance fastened, apparently to a rod, at the top of a window. Cafe curtains, so-called, of similar materials are hung, apparently from other rods on the same window, in such fashion that they may be opened or closed.

The oral evidence offered by the plaintiffs consists of the testimony of two witnesses who, in their capacities as officers or employees of the plaintiff firms, had purchased, imported, and sold valances of the kind here involved and were familiar with their use. The testimony of these witnesses established that such valances are used at the tops of windows, much as a cornice is used in such a position, i.e., to conceal the bar or other hardware upon which window draperies or curtains are hung, and the mechanism, if used, which opens or closes such draperies or curtains. Another function of such valances, where draperies or curtains are used in pairs, is to "tie" them together, presumably in a decorative sense, creating the appearance of one unit. It appears from the testimony of the witnesses that valances are bought and sold, both at wholesale and retail, under their own name as "valances."

It is apparent that the issue turns upon the common meaning of the term "curtains," as used in the tariff act, there being nothing to indicate that the commercial meaning of the term differs in any way from the common meaning. That term, so far as research indicates, has been the subject of judicial construction only three times in this and our appellate court. The decision of the latter court, in *United States* v. *American Express Co.*, 8 Ct. Cust. Appls. 157, T.D. 37286, relates to the term "curtains," as used in the "bead" provision, paragraph 333 of the Tariff Act of 1913. An examination of that decision indicates that it was actually concerned with the coverage of other language than the word "curtains" and did not involve the common meaning of that term.

The other two cases involving a construction of the term "curtains" were decided by the predecessor of this court. The earliest is known as *Lesser's* case and was decided in June 1896, reported in T.D. 17342, G.A. 3562. The merchandise involved was cotton lace lambrequins, assessed with duty under paragraph 276 of the Tariff Act of 1894, providing, among other things, for "laces" and for "lace window curtains." They were claimed to be dutiable under a catchall provision in paragraph 264 of the same act for manufactures of cotton, not specially provided for.

In determining the issue, the predecessor of this court found as facts—

\* \* \* that the lambrequins in question are an adjunct of curtains, and used in connection with curtains.

and overruled the protests. Nothing appears in this decision, except, possibly, by implication, indicating whether the board considered lambrequins to be included within the common meaning of the term "curtains."

In a decision in the case of *Max Scheuer & Bros.* v. *United States*, 27 Treas. Dec. 565, T.D. 34968, however, the predecessor of this court did consider the common meaning of the term "curtains" and expressly found that lambrequins were not included thereunder.

The merchandise involved was lace lambrequins made on the Nottingham lace-curtain machine which had been assessed with duty under the provision for cotton lace articles under paragraph 358 of the Tariff Act of 1913 and were claimed to be properly dutiable under the provision in paragraph 265 of the same act for lace window curtains made on the Nottingham lace-curtain machine.

The issue turned upon whether the term "curtains" included lambrequins or not. From the dictionary definitions cited by the board in its decision in that case, it appears that lambrequins serve the same purpose as valances and are similarly constructed. In disposing of the issue presented, the board said:

A careful examination of these definitions leads us to the conclusion that the common meaning of the word *curtains* does not include *lambrequins*. [Italics quoted.]

During the course of elaborating upon its reasons for the foregoing holding, the board distinguished *Lesser's* case, *supra*, which it held not to be controlling, saying:

It will be observed that in that case special attention was called to the report of the appraiser, in which he stated that "the goods in question consist of lambrequins made of Nottingham cotton lace, and intended for use as window curtains." The board, however, did not find as a fact that the lambrequins were curtains, although they had been so classified, and the protests, which claimed that they were not dutiable as curtains, were overruled upon the following finding of fact:

We find as facts that the lambrequins in question are an adjunct of curtains, and used in connection with curtains.

We think it is undoubtedly true that lambrequins are generally, though not always, used in connection with curtains, and when they are so used they may perhaps be said to be an *adjunct* of curtains, but that does not make them curtains. An adjunct of an article is "something joined or added to another thing, but not essentially a part of it." [Italics quoted.]

These lambrequins are not a part of the curtain, but they are used in connection with curtains as "a kind of cornice to the curtain proper." They are nothing more than short decorative hangings which may be suspended for ornament from the casing above a window or from a mantel shelf. They differ from curtains in size and shape, and are not susceptible of being adjusted like curtains to prevent the passage of light through a window or other opening or to screen or hide some object from view.

The importance of the foregoing is that it is a judicial decision with respect to the common meaning of the term "curtains," which excludes therefrom articles which are of the same nature and serve the same purposes as the valances at bar. While it would appear to be more a determination of what the term "curtains" commonly does *not* mean than what it does mean, it is, nevertheless, a binding determination of the common understanding of the term, for, as said by our appellate court in the case of *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676:

* * * on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence.

It is well settled that—

The common meaning of a term used in the statute, having been once settled and judicially determined, becomes matter of law and continues until changed language in a subsequent legislative enactment seems to necessitate a change in the common meaning of the term. [*United States* v. *Pacific Butchers Supply Co.*, 22 C.C.P.A. (Customs) 355, 358, T.D. 47377.]

The term the common meaning of which the predecessor of this court construed in the *Scheuer* case, *supra*, was "curtains." To be sure, that term appeared in a provision of the Tariff Act of 1913 for—

* * * lace window curtains * * * made on the Nottingham lace-curtain machine, and composed of cotton or other vegetable fiber, * * *

and the Government in this case urges that that decision is of no application here because, among other things, a paragraph and tariff act different from paragraph 411 of the present act were involved.

It clearly appears from a reading of the decision in the *Scheuer* case that the term which the predecessor of this court was construing was "curtains" and that the modifying words appearing both before and after that term were not involved in the construction. In other words, the determination was based upon considerations of the general application and use of the term and not upon a modified or limited use. We are of the opinion that, in such a situation, the judicial determination of the common meaning of the term applies, even though paragraph 411 of the present act is not the direct successor of paragraph 265 of the Tariff Act of 1913.

Furthermore, no contrary judicial determination of a higher court appears to have been made with respect to the common meaning of the term "curtains" since the decision in the *Scheuer* case, *supra*. And, while the term has appeared in various provisions in successive tariff acts since the judicial construction given to it in the *Scheuer* case, there is no indication anywhere of an intention to give it a meaning different from that given it by the Board of General Appraisers. We

are of the opinion, therefore, that the rule quoted above from the *Pacific Butchers Supply Co.* case applies.

Defendant urges that the term "curtains" is an *eo nomine* designation and that valances are merely a form of a curtain. *Nootka Packing Co. et al.* v. *United States*, 22 C.C.P.A. (Customs) 464, T.D. 47464, is cited for the rule that an *eo nomine* designation covers all forms of the enumerated article. The cited rule, however, would be applicable only if it were found, as matter of fact and law, that valances actually are a form of curtain.

Inasmuch as it appears that the holding of the predecessor of this court in the *Scheuer* case is dispositive, as matter of law, of the common meaning of the term "curtains," insofar as articles of the nature of lambrequins or valances are concerned, and that under that holding valances are not curtains, the *Nootka* case rule is not applicable. We may say, moreover, that the testimonial record made at the trial of the cases at bar tends to support the holding of the *Scheuer* case.

Judgment will, therefore, issue sustaining the protest claim in each case accordingly.