GENERAL CERAMICS CORPORATION *v.* UNITED STATES (R. J. SAUNDERS CO., INC., A/C THE FERROXCUBE CORP. OF AMERICA, PARTY IN INTEREST) (No. 5070)*

United States Court of Customs and Patent Appeals, January 15, 1962

*Michael Stramiello, Jr.*, for appellant.

*Jordan & Klingaman* (*Edward F. Jordan*, trial attorney, of counsel) for Party in Interest.

[Oral argument November 15, 1961, by Mr. Stramiello, Jr., and Mr. Jordan]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, C.D. 2230, overruling a protest filed by an American manufacturer, appellant here, pursuant to the provisions of Section 516(b) of the Tariff Act of 1930, as amended (19 U.S.C. 1516(b)), against the classification and assessment of duty by the Collector of Customs, Port of New York, of certain ferrite products imported by the Ferroxcube Corp. of America, Party in Interest and appellee here. The merchandise was classified under paragraph 214 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, and assessed for duty thereunder at 15 per cent ad valorem. Appellant claims classification under paragraph 212 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, effective September 10, 1955, T.D. 53877, and dutiable thereunder at 45 per cent ad valorem. The competing paragraphs read:

> 212 China, porcelain, and other vitrified wares, including chemical stoneware (but not including chemical porcelain ware, sanitary ware and

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

*C.A.D. 788.

fittings and parts therefor, or electrical porcelain ware), composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, * * * and all other articles composed wholly or in chief value of such ware; all the foregoing, whether plain white, painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

\* \* \* \* \* \* \*

Articles which are not tableware, kitchenware, table or kitchen utensils, or chemical stoneware, and which do not contain 25 per centum or more of calcined bone_____ 45% ad val.

Paragraph 214, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not * * *:
If not decorated in any manner:

\* \* \* \* \* \* \*

Other_____ 15% ad val.

After summarizing the testimony, the Customs Court stated:

It is evident from the language of paragraph 212, *supra*, that in order to meet the requirements thereof the articles or wares in question must have a body which is (1) vitrified, (2) nonabsorbent, and (3) which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture.

Since the uncontradicted evidence in this case shows that the articles are nonabsorbent, *the issue presented is whether they have vitrified bodies which when broken show the required fracture.* [Emphasis supplied.]

Various definitions of "vitrify," "vitrified," "vitreous" and "vitrification" found in three standard dictionaries and two decisions by the Court of Customs Appeals, *Vantine & Co.* v. *United States*, 9 Ct. Cust. Appls. 291, 295, T.D. 38225 and *Vandegrift & Co.* v. *United States*, 15 Ct. Cust. Appls. 165, T.D. 42221 were cited by the court, while noting:

The *Vantine* case was called to the attention of Congress when the Tariff Act of 1922 was enacted (Summary of Tariff Information, 1920, p. 148) and the *Vandegrift* case when the Tariff Act of 1930 was being enacted (Summary of Tariff Information, 1929, p. 487). While the words "other vitrified wares, including chemical porcelain ware and chemical stoneware" were added to the china and porcelain ware provision by the acts of 1922 and 1930, no changes were made in the language describing the composition of such ware. Since Congress had actual notice of the decisions, its reenactment of the language interpreted by our court of appeals is tantamount to adoption of that interpretation. *United States* v. *The Water Treatment Co. of America, etc.*, 33 C.C.P.A. (Customs) 174, C.A.D. 332; *International Expediters, Inc.* v. *United States*, 41 C.C.P.A. (Customs) 156, C.A.D. 543. The additional provision for other vitrified wares, including chemical porcelain and stoneware, does not, of course, change in any way the requirement that such wares have vitrified nonabsorbent bodies which when broken show the specified fracture.

In the Summary of Tariff Information, 1921, page 298, it was suggested that the words "vitrified nonabsorbent" be omitted before the word "body" in order to avoid conflict with the words "semivitrified or semivitreous" before "fracture." Since this was not done, it is evident that Congress intended that the wares and articles covered by paragraph 212 have vitrified bodies as well as the specified fracture.

In a more recent case, *Maher-App & Company* v. *United States*, 44 C.C.P.A. (Customs) 22, C.A.D. 630, it was held that the expression "composed of a vitrified non-absorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture" was exclusionary and that articles which did not show such fracture could not be classed under paragraph 212 by similitude.

In view of these cases, we conclude that to be classifiable under paragraph 212, an article must have a body which has been converted wholly, partially, or externally into glass or a glassy substance, to an appreciable degree, and that it must show a vitrified or vitreous, or semivitrified or semivitreous fracture.

After finding and holding that the instant ferrite articles contain no glass in the body structure, that the structures are crystalline; that glass does not form a binder and that there is no conversion to glass in the process, the court concluded:

It is evident, therefore, that the ferrite articles before the court did not have vitrified bodies, that is, they had not been converted wholly, partially, or externally into glass or a glassy substance, nor do they resemble glass in structure. A visual examination of the samples shows that they are not like glass in luster, color, brittleness, or translucency, nor do they appear to be covered with a glaze.

The mere fact that these articles show a vitrified, vitreous, semivitrified, or semivitreous fracture when broken does not establish that they are vitrified ware, *since the statute requires that they have vitrified bodies*. Other substances than glass may show a vitreous or conchoidal fracture (Dana's Manual of Mineralogy, p. 95: Kraus, Edward Henry, Mineralogy, p. 105) ; such fracture does not indicate that the body structure is wholly or partly glass (R. 77–78). [Emphasis supplied.]

Appellant argues that the court, in determining the common meaning of the term "vitrified," limited that term to include only articles "which have been converted to glass *per se* to an appreciable degree," adding that, even using the references relied on by the court, the common meaning of the term "shows that in the heat and fusion process used to produce vitrified wares, there must be a change into, a derivation from, or a conversion to, glass *or a glassy or glasslike* substance."

Although we do not agree with appellant's interpretation of the Customs Court's holding, we do agree with appellant that "vitrified," as used in paragraph 212, refers to materials that have been converted to *glass or a glassy substance by heat and fusion.* Support for that conclusion is found in the following definitions:

Webster's New International Dictionary, 1930 Edition:

> *vitrify.* To convert into, or cause to resemble, glass or a glassy substance, by heat and fusion.

24

Funk & Wagnalls New Standard Dictionary, 1925 Edition:

>*vitrified,* Converted wholly or externally into glass or a glassy substance, as a siliceous compound by fusion * * *
>
>*vitrify,* To fuse into glass or a glass-like appearance wholly or only on the surface * * *

We also note the following definition cited in appellant's brief:

Thorpe's Dictionary of Applied Chemistry, 4th Edition, 1950, at page 161, states:

>"Vitrification has been succinctly defined as the progressive partial fusion of a material."

We think the instant materials do not possess "vitrified" bodies, as that word is used in paragraph 212, since they have not been converted into glass or a glassy substance by heat *and fusion.* Although there is conflict in the record whether the material is glassy or glasslike, witnesses for both parties stated that the material is fired to a high temperature to promote a chemical reaction and form the particular ferrite crystal structure desired.

On direct examination, one of appellant's witnesses, when asked what effect the high temperature had on the material, replied: "It promotes a chemical reaction, or a composition of the various ingredients, and forms a crystal, which gives to the substance its magnetic properties." On cross-examination, when asked if the structures were "crystalline or glassy," he stated: "They are crystalline." The following testimony was given by appellee's witness:

Q. Speaking generally, Doctor, how does the body structure of these ferrites, as you have just described them, compare with the body structure of chinaware and porcelainware?

\* \* \* \* \* \* \*

A. The ferrites are wholly crystalline. China and porcelainware are partially crystalline, with a percentage of glass phase, glassy part.

\* \* \* \* \* \* \*

Q. Now, to sum up, Doctor, my understanding of your testimony, I'll ask you this question.

Am I right that the ferrites before the Court today are wholly crystalline bodies; is that a correct statement? A. Yes.

We are unable to agree with appellant that the Customs Court erred in affirming the collector's classification.